**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**June 16, 2005**

**TENTH CIRCUIT**

**PATRICK FISHER**
**Clerk**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

MICHAEL A. SODERSTRAND,

    Defendant-Appellant.

No. 04-6024

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**D.C. NO. CR-03-059-L**

Arlene Johnson, Assistant United States Attorney, (Robert G. McCampbell, United States Attorney and Randal A. Sengel, Assistant United States Attorney, with her on the briefs), Oklahoma City, Oklahoma, for Plaintiff-Appellee.

Mack K. Martin, Martin Law Office, (James L. Hankins, Coyle Law Firm, with him on the brief), Oklahoma City, Oklahoma, for Defendant-Appellant.

**Before O'BRIEN**, **HOLLOWAY** and **TYMKOVICH**, Circuit Judges.

**HOLLOWAY**, Circuit Judge.

Dr. Michael A. Soderstrand, an Oklahoma State University professor, was charged with possessing child pornography, based on material found in a safe he kept in a supply room at work, and subsequently on other material found during a search of Dr.

Soderstrand's laptop and desktop computers and computer files stored on disk. The United States District Court for the Western District of Oklahoma denied Dr. Soderstrand's motion to suppress the evidence found in the safe, and upon Dr. Soderstrand's subsequent guilty plea, sentenced him to 35 months' incarceration. Dr. Soderstrand now appeals from his conviction on his conditional plea of guilty, alleging error in the denial of his suppression motion. He also appeals, pursuant to *Blakely v. Washington*, 125 S.Ct. 2531 (2004), from his sentence challenging the validity of the district court's factual findings in sentencing. *United States v. Booker*, 124 S.Ct. 738 (2005), which applies *Blakely* to the federal sentencing guidelines, was decided the day after oral argument before us in Dr. Soderstrand's case and *Booker*'s holding is also applicable here. For reasons discussed below, we affirm the rulings below in all respects.

### I. Background

Dr. Soderstrand was head of the Electrical Engineering Department at Oklahoma State University (OSU). On July 3 or 4, 2002, Doris Al-Harake, a clerical employee in the same department, observed a gray, fireproof safe behind a punch bowl on some boxes in a department supply room. Aplt. App. at 11. Al-Harake claims that the key was in the lock of the safe when she found it, although Dr. Soderstrand disputes this contention. *Id*. Al-Harake also stated that an informal inquiry had been conducted by the Department earlier in the year to try to ascertain who owned it, but to no avail. *Id.*

On this occasion, Ms. Al-Harake decided to open the safe, ostensibly to determine who owned it. Inside she found three compact disks, five Polaroid photos, twenty-seven 35mm photos, four personal letters and sixty-three 3.5mm computer diskettes. Aplt. App.

15, 16. Three of the letters were marked as addressed to "Michael" or "Dr. Michael Soderstrand," or signed as "M. Soderstrand." *Id.* There were also two photos of Dr. Soderstrand. After opening the safe and observing the contents, Al-Harake decided to remove one of the CDs and view its contents on her office computer. On it she found an image that appeared to be several nude Asian children about 10-12 years old. *Id.*

Al-Harake returned the disc to the safe in the supply room and subsequently attempted to anonymously notify OSU authorities about the contents of the safe. She sent two emails under false names to Karl Reid, Dean of the College of Engineering, in which she alleged that Dr. Soderstrand kept child pornography in a safe in the storage room next to his office. Aplt. App. 14, 17, 18. Reid received the emails on July 8 and notified campus police chief Everett Eaton. *Id.* The next day, Eaton dispatched Officer Larry Crites to meet with Dean Reid at the College of Engineering. Officer Crites and another college official retrieved the safe from the supply room and locked it in the evidence locker at the campus police department. Aplt. App. at 12, 15. The next day, July 10, 2002, Officer Crites signed an affidavit in support of a search warrant for a state magistrate judge, in which he stated:

> On the CD Al-Harake saw a [sic] image (photo) with several Asian persons that appeared to Al-Harake to be around 10-12 years of age. In the image the Asian children were nude and did not have any pubic hair on their genital area.

Aplt. App. at 53. Based upon this information, the magistrate authorized a search warrant on July 10, 2002, and Crites called the OSU Key Shop, which opened the safe and

disclosed the contents. Aplt. App. at 13, 16. The contents of the safe then formed the evidentiary basis for subsequent investigation and prosecution of Dr. Soderstrand.

On March 19, 2003, prosecutors obtained a 13-count indictment of Dr. Soderstrand for possession of computer disks and other material containing images of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Following the indictment, Dr. Soderstrand moved to suppress the evidence yielded by the search of the safe. By Order entered on July 23, 2003, the district court denied Dr. Soderstrand's suppression motion. Dr. Soderstrand then entered a conditional plea of guilty, waiving his right to appeal but reserving his right to challenge the denial of his motion to suppress in this appeal from his conviction and sentence. Aplee. Supp. App. at 13-21.

At a combined plea and sentencing hearing, Dr. Soderstrand objected to paragraphs 24 and 25 of the Pre-Sentence Report, which recommended sentencing enhancements because the material involved minors under the age of 12, and because Dr. Soderstrand possessed ten or more images of child pornography. Aplt. App. at 89-92. The Government presented evidence through the testimony of Mark McCoy, Deputy Inspector with the Oklahoma State Bureau of Investigation (OSBI) computer crimes unit. Aplt. App. at 93-94. McCoy testified he found approximately 2,700 images of child pornography on Dr. Soderstrand's CDs, laptop and desktop computers. Aplt. App. at 95-96. Of these, the IBM computer contained 176 images, the laptop contained 226 images; and the two CDs contained 2500 images in 24 folders. Aplt. App. at 96-97. Upon completion of the sentencing hearing, the district court sentenced Dr. Soderstrand to 35

months' incarceration, three years' supervised release, 104 hours of community service and a special assessment of $100. Aplt. App. at 141-148.

## II. Jurisdiction

The United States District Court for the Western District of Oklahoma had jurisdiction pursuant to 18 U.S.C. § 3231 because Dr. Soderstrand was charged with violating the federal child pornography statute. Dr. Soderstrand entered a conditional plea pursuant to Rule 11(2) of the Federal Rules of Criminal Procedure, retaining limited rights to appeal his conviction and sentence.[1] The district court denied Dr. Soderstrand's motion to suppress on July 23, 2003. The resulting conviction and sentence entered following the guilty plea constitutes a final decision from which appeal to this court is proper pursuant to 28 U.S.C. §1291. Dr. Soderstrand filed a timely notice of appeal on January 16, 2004. This court is thus vested with jurisdiction to hear this appeal. *See United States v. Rosborough*, 366 F.3d 1145, 1147 (10th Cir. 2004).

## III. Discussion

### *A. The motion to suppress the contents of the safe*

The district court denied Dr. Soderstrand's motion to suppress the contents of the safe, concluding that the police properly obtained a warrant to search the safe after acting upon a tip from Al-Harake, who had observed the safe's contents. The court rejected Dr.

---

[1] While Dr. Soderstrand agreed to waive appeal of aspects of his conviction and sentence, nevertheless, he retained the right to appeal the district court's denial of his suppression motion. Aplt. App. at 84. Also, the Government concedes that Dr. Soderstrand may appeal the constitutionality of his sentencing under *Blakely* and *Booker*, for plain error review. Aplee. Br. at 24.

Soderstrand's contention that Al-Harake's initial search of the safe violated the Fourth Amendment, concluding that although Al-Harake was employed by a state university, she was acting as a private person, not on behalf of the Government or the State, when she first opened the safe and perused its contents. The district court also concluded that even if the search warrant was not constitutionally valid, it was not so facially invalid that the police could not have reasonably relied on it and acted in good faith by searching the contents of the safe pursuant to it.

In reviewing the denial of a motion to suppress, this court views the evidence in the light most favorable to the prevailing party and accepts the district court's factual findings unless clearly erroneous. *United States v. Jackson*, 381 F.3d 984, 988 (10th Cir., 2004). The ultimate determination of reasonableness under the Fourth Amendment, however, is reviewed de novo. *Id*. This court also reviews de novo the district court's legal conclusions regarding the sufficiency of the search warrant. *United States v. Campos*, 221 F.3d 1143, 1146 (10th Cir. 2000).

We will now set out the substance of Dr. Soderstrand's objections to the validity of the search warrant and the evidence its execution produced. Dr. Soderstrand argues that the search warrant was facially deficient because it alleged only that the CD contained in the safe depicted nude children. The statutory definition of child pornography we are concerned with requires that images depict minors engaged in sexually explicit conduct, such as graphic or simulated lascivious exhibition of the genitals or pubic area. 18 U.S.C. § 2256(2)(B)(iii). It is true that other circuits have concluded that depictions of mere nudity is not sufficient to constitute child pornography; rather, the nudity must be

- 6 -

depicted in a lascivious manner in order to be criminal. *See United States v. Horn*, 187 F.3d 781, 789 (8th Cir. 1999) (nudity alone does not suffice; there must be both an "exhibition" of the genital area and such exhibition must be lascivious); *United States v. Villard*, 885 F.2d 117, 124 (3rd Cir. 1989) (noting that the statute requires more than mere nudity because the phrase "exhibition of the genitals or pubic area" in § 2256(2)(E) is qualified by the word "lascivious."). As a result, Dr. Soderstrand urges, the warrant did not allege that the safe contained evidence of an actual crime, only that it contained an image which, absent further description, was not presumptively illegal to possess, and arguably was even protected by the First Amendment.

Dr. Soderstrand further argues that the impetus for and sole source of information supporting the search warrant were the observations of Al-Harake, which were relayed first to Dean Reid, and then by Reid to Officer Crites. According to Dr. Soderstrand, Officer Crites's reliance on Reid's representation of Al-Harake's observations was nothing more than "third party hearsay" (Aplt. Br. at 6) and insufficient to support a search warrant.

Finally, Dr. Soderstrand argues, the basis for Al-Harake's observation was her own allegedly unconstitutional search of the safe. Al-Harake was an employee of Oklahoma State University, which is funded and administered by the State of Oklahoma. Dr. Soderstand urges that this means Al-Harake was a state actor. Further, Dr. Soderstand argues that he had a reasonable expectation of privacy regarding the contents of the safe; he analogizes the safe to a purse or a briefcase, for which the Supreme Court recognized in *O'Connor v. Ortega*, 480 U.S. 709, 716 (1987) a heightened expectation of privacy,

even in the workplace context.[2] As a result, Dr. Soderstrand argues that the above factors rendered the search warrant that was later issued by the magistrate judge so lacking in probable cause that officers could not claim reasonable reliance on it under the "good faith" exception recognized in *United States v. Leon*, 468 U.S. 897 (1984).

We are not persuaded by Dr. Soderstrand's arguments, which we have noted above. Even if we assume that Dr. Soderstrand had a reasonable expectation of privacy in the safe, which he never identified as belonging to him and which he left unattended in a common storage room accessible to a number of employees, we find that Al-Harake was not a state actor in her initial search of the safe, and the later search of the safe by law enforcement officers was supported by a valid search warrant or the officers' good faith reliance on that warrant under *Leon*, *supra*.

An affidavit establishes probable cause for a search warrant if the totality of the information it contains establishes the "fair probability that contraband or evidence of a crime will be found in a particular place." *See United States v. Rice*, 358 F.3d 1268, 1274 (10th Cir. 2004). Although we review the district court's ruling on the sufficiency of the search warrant de novo, we do not review the issuing judge's determination of probable

---

[2] Specifically, the Court noted:

> Not everything that passes through the confines of the business address can be considered a part of the workplace context, however. An employee may bring closed luggage to the office prior to leaving on a trip, or a handbag or briefcase each workday. While whatever expectation of privacy the employee has in the existence and the outward appearance of the luggage is affected by its presence in the workplace, the employee's expectation of privacy in the *contents* of the luggage is not affected in the same way.

*Id.* (emphasis in original).

cause de novo. Instead, this court grants the magistrate's determination of probable cause "great deference" such that we ask only "whether the issuing magistrate had a 'substantial basis' for determining probable cause existed." *United States v. Le*, 173 F.3d 1258, 1265 (10th Cir. 1999); *United States v. Wittgenstein*, 163 F.3d 1164, 1172 (10th Cir. 1998).

The affidavit in question indicated that Al-Harake had opened the safe and examined its contents, that the safe contained photographs and computer disks, that on one of the computer disks was an image of naked children, that Al-Harake contacted the Dean, and the Dean contacted the police. This was sufficient for the issuing judge to reasonably conclude that images of child pornography might reasonably be expected to be contained within the computer disks, CDs or other data storage devices contained in the safe. Neither *Horn*, 187 F.3d *supra*, nor *Villard*, 885 F.2d *supra*, are apposite to this case, because both of those cases involved the quantum of evidence at trial. As the Supreme Court noted in *Illinois v. Gates*, 462 U.S. 213 (1983):

> "the quanta. . . of proof" appropriate in ordinary judicial proceedings are inapplicable to the decision to issue a warrant. Finely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision. While an effort to fix some general, numerically precise degree of certainty corresponding to "probable cause" may not be helpful, it is clear that "only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause."

*Id.* at 235 (citations omitted).

We also find without merit Dr. Soderstrand's argument that Al-Harake was a Government actor whose initial search of the safe violated Dr. Soderstrand's Fourth Amendment rights. While Al-Harake may be an employee of the Government due to her

- 9 -

State employment at OSU, she was in this case acting solely on her own account. To determine whether a private person's search becomes a Government search, the court examines "(1) whether the Government knew of and acquiesced in the intrusive conduct, and (2) whether the person searching intended to assist law enforcement efforts or to further his [or her] own ends." *United States v. Souza*, 223 F.3d 1197, 1201 (10th Cir. 2000). Dr. Soderstrand does not contend that law enforcement officers coerced, dominated or directed Al-Harake, or that she otherwise conducted her search pursuant to any law enforcement or other governmental objective. Rather, as he admits, "Al-Harake simply became curious about the safe and its contents." Aplt. Br. At 19.

Finally, even if the search warrant was not valid, the police officers who acted on the warrant nonetheless did so in good faith. When officers execute a search warrant in reasonably good faith reliance on its validity, evidence obtained through the warrant will not be suppressed even if the search warrant is ultimately determined to be invalid. *See Leon*, 468 U.S. *supra* at 922. "Just as reviewing courts give 'great deference' to the decisions of judicial officers who make probable cause determinations, police officers should be entitled to rely upon the probable-cause determination of a neutral magistrate when defending an attack on their good faith for either seeking or executing a search warrant." *United States v. Tuter*, 240 F.3d 1292, 1300 (10th Cir. 2001) (citation omitted).

Here, the police did everything they were supposed to do. They were made aware that there may be evidence of a crime (possession of child pornography) contained in the safe. Rather than opening it immediately, they secured it, presented the information they had available to a neutral magistrate, and finally conducted a search of the safe only upon

the magistrate's approval. Dr. Soderstrand introduced no countervailing evidence of any bad faith conduct by the police officers in question. As a result, even were Dr. Soderstrand's objections sufficient to cast doubt on the validity of the search warrant, he would not be entitled to the exclusionary remedy he seeks.

### B. The Constitutionality of Dr. Soderstrand's Sentence

The district court below, rather than a jury, made the following findings of fact in the course of its sentencing determination: (1) the material involved prepubescent minors or minors under the age of 12 years; (2) the offense involved possessing ten or more books, magazines, periodicals, films, videotapes, or other items, containing a visual depiction involving the sexual exploitation of a minor; and (3) a computer was used for the transmission of the material.[3] On appeal, Dr. Soderstrand argues that he did not admit to any of these findings. Aplt. Br. at 28. However, in his guilty plea, Dr. Soderstrand admitted "[k]nowingly possessing computer disks and material containing images of child pornography that had been mailed, shipped or transported in interstate or foreign commerce by any means, including by computer." Aplt. App. at 141. We find that this amounts to an admission to the substance of the third finding - that a computer was used in the transmission of the material.[4]

---

[3] As we explain, each of these findings of fact carried with them a two level enhancement under the Federal Sentencing Guidelines. The district court also found an off-setting two level reduction applicable to Dr. Soderstrand, on the basis that he accepted responsibility for his actions. This finding is not at issue on appeal.

[4] We note that not only does Dr. Soderstrand admit by the plain language of his plea that the material was transmitted "by any means, including by computer," but that virtually all of the evidence against Dr. Soderstrand was in the forms of computer files and computer

Dr Soderstrand objected below to the Pre-Sentence Report findings, later adopted by the district court, which concerned the age of the minors depicted in the material he possessed, and the quantity of material he possessed. Aplt. App. at 90-91. He did not argue below, however, that the district court's findings of fact on these or any other issues violated his Sixth Amendment rights. Taking into account the facts admitted by Dr. Soderstrand, but excluding the contested facts regarding the age of the minors and the quantity of material, Dr. Soderstrand would have been subject to a total offense level of 15. In a case such as his, where there is no prior criminal record, this offense level would have had a guideline sentencing range of 18-24 months. Considering all the district court's findings, however, Dr. Soderstrand was subject to a total offense level of 19, with a resulting sentencing range of 30-37 months. The district court sentenced Dr. Soderstrand within this latter range, to a total of 35 months' incarceration.

For the first time on appeal, Dr. Soderstrand argues that this sentence violated his Sixth Amendment right to a jury trial, pursuant to *Blakely v. Washington*, 125 S.Ct. *supra*. *See also United States v. Booker*, 125 S.Ct. *supra*; *United States v. Gonzales-Huerta*, 403 F.3d 727 (10th Cir. 2005) (en banc). Because he failed to raise this issue below, we review the district court's sentencing determination for plain error. *Gonzales-Huerta*, *supra* at 732. "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id*. *See also United States v. Olano*, 507 U.S. 725,

disks. Dr. Soderstrand raised no objection below to any portion of the PSR which stated that the material in question was transmitted by computer.

732 (1993). We apply this analysis "less rigidly when reviewing a potential constitutional error." *United States v. Dazey*, 403 F.3d 1147, 1174 (10th Cir. 2005).

Here there is error and it is plain. A more difficult question follows under the third prong of *Olano*, as applied in *Gonzalez-Huerta* and subsequent cases – whether the error affected Dr. Soderstrand's substantial rights. We have held that a defendant may make this showing in at least two ways:

> First, if the defendant shows a reasonable probability that a jury applying a reasonable doubt standard would not have found the same material facts that a judge found by a preponderance of the evidence, then the defendant successfully demonstrates that the error below affected his substantial rights.... Second, a defendant may show that the district court's error affected his substantial rights by demonstrating a reasonable probability that, under the specific facts of his case as analyzed under the sentencing factors of 18 U.S.C. § 3553(a), the district court judge would reasonably impose a sentence outside the Guideline range.

*Dazey*, 403 F.3d at 1175 (footnote omitted). The defendant bears the burden to establish that his substantial rights were affected to satisfy the third *Olano* prong. *Dazey*, *supra*.

Dr. Soderstrand does not argue that the district court would have imposed a lesser sentence under the facts it found, had the judge been aware of his discretion to do so. In order to demonstrate that the error here affected his substantial rights (to satisfy the third prong of *Olano*), Dr. Soderstrand must therefore show a reasonable probability that a jury applying a reasonable doubt standard would have found either that he did not possess more than ten images which met the standard for child pornography under 18 U.S.C. §2256(2)(B)(iii), or that none of the images he possessed were of a child under 12, or that if he did possess any images of children under 12, those images did not meet the standard for child pornography under 18 U.S.C. §2256(2)(B)(iii).

- 13 -

Before the district court, Dr. Soderstrand did not introduce any affirmative evidence which would have supported any of these contentions. Rather, Dr. Soderstrand argued principally that the Government failed to prove the element of "lasciviousness" necessary for an image or depiction to constitute child pornography under the statute and as explained by *United States v. Dost,* 636 F.Supp. 828, 832 (S.D. Cal. 1986); *accord United States v. Wolf*, 890 F.2d 241, 245 (10th Cir. 1989) (applying the *Dost* factors to the term "lascivious"). The Government, by contrast, contends that the evidence and testimony it introduced was "overwhelming," and that "any fact-finder, under any standard would have reached the same sentencing determinations that the district court did at sentencing." Aplee. Br. at 31, 33.

Ultimately, we need not reach a decision on the third *Olano* prong – whether Dr. Soderstrand's substantial rights were affected. Even assuming that Dr. Soderstrand could show that the sentencing below affected his substantial rights, we find that Dr. Soderstrand has not met his "burden of persuading us that the error seriously affected the fairness, integrity, or public reputation of judicial proceedings," *United States v. Mozee*, 405 F.3d 1082, 1091 (10th Cir. 2005), thus failing to satisfy the fourth prong of *Olano*. As we have explained, in the context of a constitutional *Booker* error "the question before us is whether a reversal and remand for resentencing by the district court under a discretionary guidelines regime would advance the fairness, integrity or public reputation of the courts." *Mozee*, 405 F.3d *supra*. "[C]ourts have held that sentencing error meets the fourth prong of plain-error review only in those rare cases in which core notions of justice are offended." *Gonzalez-Huerta*, 403 F.3d *supra* at 739.

Here the district court determined that the guideline range applicable to Dr. Soderstrand's offense was 30-37 months. It sentenced him toward the upper end of that range, imposing a sentence of 35 months. The district judge stated that he chose not to sentence Dr. Soderstrand to the maximum penalty because there was no evidence Dr. Soderstrand had exchanged or trafficked in any of the pornographic material, rather than simply possessing it for his own use, and because Dr. Soderstrand had otherwise had an "outstanding career" with no evidence of any past misconduct. Aplt. App. at 133. However, the judge did not sentence Dr. Soderstrand to the minimum or close to the minimum penalty under the guideline range, either. He noted that child pornography is produced for profit, and the reason why it can be made for profit is because people like Dr. Soderstrand will view it. *Id*. at 132. The judge emphasized the "many victims" ultimately impacted by Dr. Soderstrand's conduct, with the "saddest of all" being the many young children who were abused in the making of the pornographic material Dr. Soderstrand was convicted of possessing. *Id*. As a result, the judge stated he believed a sentence of 35 months' incarceration was appropriate. *Id*. at 133.

Thus the district judge exercised his discretion and determined that a sentence of 35 months was appropriate, although he obviously could have sentenced Dr. Soderstrand to a lesser term of imprisonment. Accordingly, "there is no basis for us to assume [Dr. Soderstrand] would receive a lesser sentence if he were resentenced under a discretionary sentencing regime in which the district court is required to 'consider' the guidelines when it exercises its discretion." *Mozee*, 405 F.3d *supra* at 1092. Dr. Soderstrand has failed to establish that there is an appearance of unfairness in his sentence, and accordingly, he has

failed to satisfy the fourth prong of *Olano*.  We therefore decline to exercise our discretion to notice the *Booker* constitutional error here.

Accordingly, the conviction and sentence of the district court are **AFFIRMED**.