**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 7, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JOSE SANTOS JIMENEZ,

    Defendant-Appellant.

No. 09-5015

(D.C. No. 08-CR-00055-TCK-2)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **ANDERSON,** and **BALDOCK**, Circuit Judges.[**]

After the district court denied his motion to suppress, Defendant Jose Santos Jimenez entered a conditional plea of guilty to possession of marijuana with intent to distribute. The plea reserved Defendant's right to challenge the district court's ruling on the motion to suppress. The district court sentenced Defendant to 51 months in prison. Defendant appeals, alleging the district court should have granted his motion to suppress in the first instance. We have jurisdiction under 28 U.S.C.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R.App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

§ 1291, and affirm.

I.

Responding to a tip developed from an undercover investigation, Tulsa police officers approached a residence on 140th E. Avenue in Tulsa, Oklahoma shortly after midnight on February 6, 2008. Officer Tim Wilson smelled fresh marijuana emanating from the residence while standing in the driveway. Officer Wilson also heard voices coming from the garage area of the residence.

Officer Wilson, dressed in plain clothes, knocked on the door of the residence, flanked by two other officers. Flor Mendoza answered. Although Mendoza allowed the officers into the residence, there is a dispute about the specific facts giving rise to their entry. In the district court, Mendoza testified that she consented to the entry, which is consistent with Officer Wilson's account. Mendoza, however, had previously testified in a state court hearing that the officers entered without consent. She repudiated this account before the district court, indicating that she was pressured by her attorney and other occupants of the residence to lie about the circumstances of the entry. The district court did not make any findings regarding these facts because it deemed the details were not critical to Defendant's motion to suppress. Likewise, we conclude these facts are not essential to resolving Defendant's appeal.

After Mendoza allowed the officers to enter the residence, they conducted a sweep to secure the house. During the sweep, they found four men in the garage

2

with approximately 350 pounds of marijuana, packaging materials, and scales in plain sight. Among the four men were Defendant and Rafael Gonzalez. The officers placed all four men in handcuffs. Gonzalez told Officer Wilson that he lived at the residence with his girlfriend, Mendoza, and her children. Gonzalez gave Officer Wilson consent to search the residence. Officers found other items in the residence not relevant to Defendant's appeal.

After his indictment, Defendant filed a motion to suppress the evidence seized during the search. Defendant made two arguments in support of his motion. First, Defendant contended the police violated his reasonable expectation of privacy in the residence by entering without consent and impermissibly performing a sweep leading to the discovery of Defendant. Second, Defendant alleged that suppression was required under the fruit of the poisonous tree doctrine, even if he lacked an expectation of privacy in the residence.

At a hearing on the motion, it became clear that Defendant did not have free access to the residence, had never spent the night at the house, did not have a key to the house, did not keep any personal belongings at the house, had only visited the house four or five times, and that the sole purpose of these visits was to unload marijuana. The district court held that these facts precluded Defendant from establishing standing to challenge the search of Gonzalez's home.

The district court also rejected Defendant's arguments based on the fruit of the poisonous tree doctrine. In so ruling, the district court observed that Defendant had

3

never argued he was unlawfully detained or that his Fourth Amendment rights were violated.

After the district court denied his motion to suppress, Defendant entered a conditional plea of guilty to possession of marijuana with intent to distribute. The plea reserved the right to challenge the district court's denial of his suppression motion. Defendant made a timely appeal.

I.

In reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the Government and accept the district court's factual findings unless they are clearly erroneous. See United States v. Soderstrand, 412 F.3d 1146, 1151 (10th Cir. 2005). We review de novo the district court's ultimate determination of reasonableness under the Fourth Amendment. See id.

A.

A defendant "charged with crimes of possession may only claim the benefits of the exclusionary rule if [his] own Fourth Amendment rights have in fact been violated." United States v. Jarvi, 537 F.3d 1256, 1259 (10th Cir. 2008) (quoting United States v. Salvucci, 448 U.S. 83, 85 (1980)). The district court referred to this principle as Fourth Amendment "standing," but this terminology is, technically, "a misnomer." Id. at 1260 n.2. Although the substance of the inquiry remains the same, the Supreme Court has counseled that the question whether a defendant can show a violation of his own Fourth Amendment rights "is more properly placed

4

within the purview of substantive Fourth Amendment law than within that of standing." Rakas v. Illinois, 439 U.S. 128, 140 (1978). With that said, we do not quarrel with the district court's analysis on this point. Several distinguished jurists continue to use the "standing" terminology as useful shorthand. See, e.g., United States v. Romain, 393 F.3d 63, 68 (1st Cir. 2004) (Selya, J.) (acknowledging after Rakas that the term "standing" "is imprecise," but adopting the usage "[f]or simplicity's sake"). But, regardless of terminology, our precedents still foreclose a defendant from successfully excluding "evidence that has been 'come at by exploitation' of a violation of *somebody else's* rights." Jarvi, 537 F.3d at 1259.

Defendant concedes on appeal that he lacks "standing" to challenge the officer's initial entry, which means that he had no expectation of privacy in Gonzalez's residence. Defendant's brief demonstrates he understands the equivalence of these two concepts.[1]

Even if Defendant had not made this concession, we would affirm the district court's conclusion that Defendant had no reasonable expectation of privacy in Gonzalez's residence. The district court's conclusion falls squarely within a host of controlling authority. See, e.g., Minnesota v. Carter, 525 U.S. 83, 90 (1998)

---

[1] Although Defendant stated in his brief that "[t]he first issue to be decided is whether or not [he] has standing to challenge the search and seizure," he subsequently noted "there was probably not sufficient evidence developed at the suppression hearing to support a finding that [Defendant] had an expectation of privacy" in Gonzalez's residence. Appellant's Brief at 5, 6.

(holding a person at another's residence solely for the purpose of engaging in drug related activity has no legitimate expectation of privacy in the residence); United States v. Thomas, 372 F.3d 1173, 1176 n.1 (10th Cir. 2004) (holding a "person who is present at another's home, with permission, simply for the purpose of consummating a business transaction does not have a reasonable expectation of privacy there"). As we observe below, the conclusion that Defendant had no legitimate expectation of privacy in the residence has important consequences for his arguments concerning the fruit of the poisonous tree doctrine.

B.

At the outset of our discussion, we note that Defendant did not argue in district court that *his* rights, as compared to those of Gonzalez, were violated by an illegal detention. The district court correctly concluded the cases Defendant relied upon were, therefore, distinguishable on this fact alone. See United States v. DeLuca, 269 F.3d 1128, 1132 (10th Cir. 2001) (holding the defendant could "contest the lawfulness of his own detention" and seek suppression of drugs found in a vehicle search after he was detained "as the fruit . . . of that illegal detention" even though defendant did not have a reasonable expectation of privacy in the vehicle searched); United States v. Shareef, 100 F.3d 1491, 1500 (10th Cir. 1996) ("If the physical evidence found in the vehicles was the fruit of the defendants' unlawful detention, it must be suppressed."); United States v. Eylicio-Montoya, 70 F.3d 1158, 1162 (10th Cir. 1995) (distinguishing "passenger standing to directly challenge a vehicle

6

search from passenger standing to seek suppression of evidence discovered in a vehicle as the fruit of an unlawful stop, detention, or arrest.").

Now, in response to the district court's cue, Defendant has raised for the first time on appeal the contention that he was unlawfully detained. In the ordinary civil case, we would have little trouble refusing to address a new argument on appeal under these circumstances. See, e.g., Ramsey Winch Inc. v. Henry, 555 F.3d 1199, 1204 n.6 (10th Cir. 2009) (observing that an appellate court will generally "not resolve issues on appeal unless they are presented, considered, and decided by the district court"). But our criminal cases have been more cautious. See United States v. Zubia-Torres, 550 F.3d 1202, 1207 (10th Cir. 2008) (holding that plain error review is appropriate unless there is "some evidence" that the defendant made a "knowing and voluntary" waiver of a particular argument). Because there is no evidence in this case that Defendant's failure to argue he was unlawfully detained was both knowing and voluntary, we apply plain error review. See United States v. Olano, 507 U.S. 725, 733 (1993) (noting that a waiver involves the intentional relinquishment of a known right).

## II.

Defendant contends his rights were violated by an illegal detention and that we should suppress the evidence police found of his drug trafficking activity as tainted fruits of the poisonous tree. We will only reverse for plain error when we identify (1) an error, (2) that is plain, which (3) affects substantial rights. See Zubia-

7

<u>Torres</u>, 550 F.3d at 1208. "If these three criteria are met, then we may exercise discretion to correct the error if it seriously affects the fairness, integrity, or public reputation of the judicial proceedings." <u>Id.</u> Here, we deduce no error because the evidence of Defendant's drug trafficking is not fruit of the poisonous tree.

A.

"The poisonous tree doctrine allows a defendant to exclude evidence 'come at by exploitation' of violations of his Fourth Amendment rights." <u>Jarvi</u>, 537 F.3d at 1259 (quoting <u>Wong Sun v. United States</u>, 371 U.S. 471, 487-88 (1963)). Defendant has the burden of demonstrating "a 'factual nexus' between a violation of *his own* Fourth Amendment rights and the *discovery* of the challenged evidence." <u>Id.</u> (emphasis added). To properly evaluate the connection between the purported violation of the Fourth Amendment and the alleged derivative evidence, "it is critical that the precise police conduct being objected to be properly identified, for this may itself turn out to be determinative." 6 Wayne R. LaFave, <u>Search & Seizure: A Treatise on The Fourth Amendment</u> § 11.3 (4th ed. 2004 & 2008 Supp.).

Here, Defendant objects to the police conducting a protective sweep of Gonzalez's residence. According to Defendant, the protective sweep was unlawful because it was not conducted incident to an arrest, as required by our precedent. <u>See United States v. Torres-Castro</u>, 470 F.3d 992, 996-97 (10th Cir. 2006) (noting the Tenth Circuit follows the minority rule, allowing a protective sweep to precede an arrest only if there is "a legitimate basis for the arrest prior to the search, and the

8

arrest . . . follow[s] quickly thereafter"). Because the Government has not argued that the police had probable cause to arrest Defendant prior to conducting a sweep of Gonzalez's residence, we will assume *without deciding* that the sweep was impermissible.

## B.

Despite our assuming the illegality of the protective sweep, Defendant's argument fails because *his rights* were not violated by the protective sweep. "[T]he fruit of the poisonous tree doctrine applies only when the defendant has [a reasonable expectation of privacy] regarding the Fourth Amendment *violation* which constitutes the poisonous tree." United States v. Olivares-Rangel, 458 F.3d 1104, 1117 (10th Cir. 2006). Here, the conduct Defendant challenges, *i.e.*, the alleged poisonous tree, is the protective sweep of Gonzalez's home which led to his allegedly unlawful detention. Essentially, Defendant argues that, by waiving the magic wand of an unlawful detention, he may bootstrap himself into the position of challenging the sweep of Gonzalez's residence as if he had a reasonable expectation of privacy therein. But Defendant cannot challenge this conduct because he had no reasonable expectation that his presence at the residence—solely for the purpose of illicit drug trafficking activity—would remain private.

## 1.

We arrive at the conclusion that Defendant may not challenge the protective sweep of Gonzalez's residence based on the seminal case defining the fruit of the

9

poisonous tree doctrine, <u>Wong Sun v. United States</u>, 371 U.S. 471 (1963). In <u>Wong Sun</u>, federal agents illegally entered and arrested Toy at his premises because of a tip that he was selling drugs. <u>Id.</u> at 474. Under questioning, Toy said that he did not have any narcotics, but that Yee did. <u>Id.</u> Agents then entered Yee's premises and recovered narcotics, which Yee said he obtained from Toy and Wong Sun. <u>Id.</u> The narcotics found at Yee's premises were later admitted against Toy and Wong Sun, over their objections. <u>Id.</u> at 477. The Supreme Court held that Wong Sun could not object to admission of the narcotics because the illegal search of Yee's premises "invaded no right of privacy of person or premises which would entitle Wong Sun to object." <u>Id.</u> at 492. By contrast, Toy *could* object to the admission of the narcotics because Toy's Fourth Amendment rights were violated with respect to the poisonous tree, *i.e.*, the initial illegal entry and detention of Toy at *his own* premises which led to Yee. <u>Id.</u> at 488. If Toy had merely objected to officers' conduct at Yee's premises, he would have been unable to object to admission of the narcotics. <u>See id.</u>; <u>see also</u> <u>Olivares-Rangel</u>, 458 F.3d at 1117 (observing that Toy was "entitled to suppression of the drugs found at Yee's house because it was clear that the narcotics were come at by the exploitation of Toy's statement and hence that the drugs may not be used against Toy. Thus, regardless of the fact that Toy maintained no reasonable expectation of privacy in the drugs at Yee's house . . . he could object to them as poisonous fruits.") (internal quotations, alterations, and citations omitted).

Here, Defendant finds himself in the predicament that Toy would have been

10

in had authorities not first illegally entered Toy's own premises and obtained information *before* obtaining the narcotics from Yee, *i.e.*, Defendant objects to alleged police misconduct in entering an area where he had no reasonable expectation of privacy. Defendant's lack of a legitimate expectation of privacy in Gonzalez's residence cuts off his fruit of the poisonous tree argument at the knees. See Alderman v. United States, 394 U.S. 165, 171-72 (1969) (holding a Fourth Amendment violation can only be raised "by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence."). Merely by alleging a subsequent unlawful detention, Defendant cannot now bootstrap himself into the position of one with "standing" to challenge the sweep of Gonzalez's residence. Defendant's Fourth Amendment rights were not violated *with respect to the poisonous tree*. See LaFave § 11.3 (noting "the question 'is whether [the defendant's] Fourth Amendment rights were violated' with respect to the poisonous tree") (quoting Olivares-Rangel, 458 F.3d at 1117).

To be able to object to the police conducting an illicit protective sweep of the Gonzalez residence, Defendant would have to have some basis to claim that the sweep violated *his rights*. He does not. We conclude, therefore, that his subsequent detention was lawful.

2.

Defendant's detention occurred after the police had conducted the sweep of Gonzalez's residence, and only an individual with a legitimate expectation of privacy

11

in the residence could object to the sweep. After entering the garage, officers acted reasonably in detaining Defendant when they caught him red handed with large quantities of marijuana, cuttings tools, and scales in plain sight. See United States v. Turner, 553 F.3d 1337, 1344 (10th Cir. 2009) (holding a "warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed").

We reject any contention that the officers could not rely on the readily apparent drug trafficking evidence in the garage because they were not "lawfully located in a place from which the [drug paraphernalia could] be plainly seen." United States v. Naugle, 997 F.2d 819, 822 (10th Cir. 1993). In holding as much, we agree with our sister circuit's reasoning that a claim the officers were not legitimately on the premises can only be raised by an individual with a legitimate expectation of privacy in those same premises. See United States v. Paopao, 469 F.3d 760, 765 (9th Cir. 2006), cert. denied, 550 U.S. 938 (2007).

In Paopao, the police arrested the defendant after he entered an apartment operated solely as an illegal gambling establishment, deposited a tan bag, and exited. Id. at 763. After securing the defendant, police entered the apartment in hopes of finding his associate who was suspected of bank robbery. Id. During a protective sweep of the apartment, an officer saw a hand gun jutting out of the tan bag, which he seized and subsequently searched. Id. After the defendant was indicted for being a felon in possession of a firearm, he moved to suppress the firearm, arguing that the

12

protective sweep of the apartment was unlawful because police "did not have a legal right to be in the" apartment. Id. at 765. The Ninth Circuit rejected this claim, holding that because the defendant "had no reasonable expectation of privacy in the [apartment], he cannot challenge the officer's entry or protective sweep." Id. The court reasoned that its holding was supported by "long-established Supreme Court . . . precedent that a privacy interest in the place or thing searched is always required in order for a defendant to challenge the search." Id. Here, Defendant had no reasonable expectation that his illicit drug trafficking activity in Gonzalez's residence would be free from intrusion and, thus, he cannot challenge the officers entry into the garage.

Having determined that the district court committed no error, much less a plain one, in rejecting Defendant's contentions based on the fruit of the poisonous tree doctrine, we need not consider the Government's other arguments supporting denial of Defendant's motion to suppress.

AFFIRMED.

Entered for the Court,


Bobby R. Baldock
United States Circuit Judge


13