**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 8, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DANIEL KROEKER,

    Defendant - Appellant.

No. 24-3060
(D.C. No. 6:22-CR-10014-JWB-1)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **KELLY**, and **CARSON**, Circuit Judges.
_____

Prosecutors bear the burden of proving the crime charged in their indictments. Successfully prosecuting a charge that a defendant received certain materials "in interstate commerce" requires the government to prove that the materials traveled between states. Merely showing that something came from a facility of interstate commerce like a computer or the internet does not meet this burden.

Here, the government indicted Defendant Daniel Kroeker for receipt and possession of child pornography. The relevant indictment language in both counts differed: although the government charged Defendant with receipt "in and affecting

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

interstate and foreign commerce," it charged Defendant with possession only "in interstate and foreign commerce." At trial, the government produced no evidence that the child pornography Defendant allegedly possessed traveled in interstate commerce. The jury nevertheless convicted him on both counts.

Defendant challenges his receipt conviction because of an allegedly inaccurate instruction the district court gave the jury and his possession conviction for insufficient evidence. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm Defendant's receipt conviction but reverse his possession conviction.

## I.

Defendant decided to peruse Tumblr one night and found himself looking at a six-year-old boy's genitals. Using the handle "tobeautifullwomen," he chatted with Kyle Enzminger, whose handle was "kinkyolder53," on the social media platform. They discussed their sexual habits, and Defendant asked "Can i see ur son penis[?]" Enzminger then sent Defendant a picture of a young boy in a bathtub looking at the camera with his penis visible taken in Enzminger's North Dakota residence. Defendant responded with a naked picture of himself with an erection.

North Dakota authorities investigated Enzminger and alerted Kansas authorities about Defendant's activities. Kansas authorities traced Defendant's Tumblr account to him, received a warrant to search the account and his residence, and arrested him. Defendant admitted in a police interview he used his Tumblr account to obtain pornographic images, including child pornography. He also directed authorities to his computer, which also held child pornography.

2

A federal grand jury indicted Defendant for receipt of child pornography under 18 U.S.C. § 2252A(a)(2) and possession of child pornography under 18 U.S.C. § 2252A(a)(5)(B).  Both required the government to prove that the pictures Defendant possessed and received were child pornography depicting an "actual or simulated . . . lascivious exhibition of the anus, genitals, or pubic area of any person."  18 U.S.C. § 2256(2)(A)(v).  The instructions the district court gave the jury defined lascivious exhibition as "indecent exposure of the anus, genitals, or pubic area, usually to incite lust," noting that "[n]ot every exposure is a lascivious exhibition."  The instructions also said that "[i]t is not necessary that the images be intended or designed to elicit a sexual response in the average viewer," and that "you may consider whether the visual depictions would appeal to persons who are sexually attracted to children."  The instructions included six non-binding factors ("the Dost factors") that the jury could (but did not have to) consult to determine whether the picture Enzminger sent Defendant was lascivious:

1.  Whether the focal point of the visual depiction is on the child's genitals or pubic area;

2.  Whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

3.  Whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

4.  Whether the child is fully or partially clothed, or nude;

5.  Whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

6.  Whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

3

The district court also included definitions of child pornography from sections of the statute the government did not charge, noting that it could include "a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct"; and a "visual depiction [that] has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct." 18 U.S.C. § 2256(8)(B)–(C). The only image the government used to support the receipt count was the image of the naked six-year-old child Enzminger sent Defendant. Defendant moved for acquittal, arguing that the picture did not meet the relevant definition of child pornography. The district court denied that motion.

The district court's possession-count instruction was less elaborate. The government had to prove that Defendant knowingly possessed "a computer disk or other material that contained items of child pornography . . . [that] had been transported in interstate or foreign commerce by any means . . . ." The government premised its case for this count on where authorities discovered most of the child pornography: his computer. It argued that computers could connect to the internet, a "facility of interstate or foreign commerce," and that the jury should infer that Defendant got much of his child pornography through the internet because of various website links embedded in the images. Defendant moved for acquittal on this count as well, but the district court again denied his motion. The jury convicted on both counts.

## II.

Defendant appeals both of his convictions: his receipt-of-child-pornography count based on legal errors in the lascivious-exhibition jury instruction and his

4

possession-of-child-pornography count based on insufficiency of the evidence. "We review jury instructions de novo, examining whether as a whole, the instructions accurately informed the jury of the issues and the governing law." Wilson v. Schlumberger Tech. Corp., 80 F.4th 1170, 1173 (10th Cir. 2023), cert. denied, 144 S. Ct. 2630 (2024) (mem) (quoting Henning v. Union Pac. R.R. Co., 530 F.3d 1206, 1221 (10th Cir. 2008)). And "[i]n reviewing the sufficiency of the evidence and denial of a motion for judgment of acquittal, this court reviews the record de novo . . . ." United States v. Clark, 717 F.3d 790, 805 (10th Cir. 2013) (quoting United States v. Irvin, 682 F.3d 1254, 1266 (10th Cir. 2012)).

III.

A.

Defendant argues the district court's jury instructions for lascivious exhibition on the receipt count erred for four reasons. First, he contends that defining lascivious exhibition as "indecent exposure . . . usually to incite lust" ignores lascivious's ordinary meaning. He argues the definition "permit[ed] the jury to convict even if the image at issue involve[d] a minor who did not engage in sexually explicit conduct (i.e., even if the image is of non-lascivious conduct or mere nudity)." Defendant emphasizes that lascivious denotes only "salacious" conduct that "excit[es] sexual desires" or "[i]ncit[es] to lust or wantonness." He further contends the district court's definition not only implied subjective indecency was illegal under the statute, but also risked infringing on First Amendment-protected speech by criminalizing mere nudity.

5

We disagree.  The district court included the proviso that "[n]ot every exposure is a lascivious exhibition" to diffuse suggestion that mere nudity was lascivious.   It similarly included the <u>Dost</u> factors because they are a judicially approved method of determining whether pictures and other evidence have the sexual dimension that the statute requires to qualify them as child pornography.  See <u>United States v. Wolf</u>, 890 F.2d 241, 244–45 (10th Cir. 1989).  As a sister circuit observed,

> the ordinary meaning of the phrase 'lascivious exhibition' means a depiction which displays or brings forth to view in order to attract notice to the genitals or pubic area of children, in order to excite lustfulness or sexual stimulation in the viewer.  Such a definition does not contain any requirement of nudity, and accords with the [<u>Dost</u> factors] for determining whether certain material falls within the definition of [child pornography].

<u>United States v. Knox</u>, 32 F.3d 733, 745–46 (3d Cir. 1994).  Just the same, mere nudity is not lascivious.  <u>United States v. Isabella</u>, 918 F.3d 816, 831 (10th Cir. 2019) (quoting <u>United States v. Soderstrand</u>, 412 F.3d 1146, 1151–52 (10th Cir. 2005)).  The district court's jury instruction conforms with this understanding, and gave the jury tools like the <u>Dost</u> factors so it could determine whether Enzminger's photograph of the six-year-old child was lascivious and not merely nude.  The jury instructions neither conflicted with lascivious's meaning nor infringed constitutionally protected speech.[1]

---

[1] The district court also did not inappropriately define lascivious by referencing indecency.  Black's Law Dictionary, the leading dictionary on legal usage, has used indecent as a synonym for lascivious since at least the fifth edition in 1979, and continues to do so in the most recent edition.  Compare Lascivious, BLACK'S LAW DICTIONARY (3d ed. 1933) ("Tending to excite lust; lewd; indecent; obscene . . . .") with Lascivious, BLACK'S LAW DICTIONARY (12th ed. 2024) (using the same definition).

Second, Defendant objects to the district court's decision to include the Dost factors in the instruction. Citing critical case law from other circuits, he argues "they are 'a list of difficult-to-apply, judicially-created factors,' that add an unstructured judicial gloss on what this Court has labeled a 'sufficiently definite,' 'commonsensical term.'" He admits that we sanctioned using the Dost factors in other cases, but never as part of jury instructions and never for receipt of child pornography cases. He advocates limiting their application to child pornography production cases, arguing they best suit that theory of harm. Focusing mostly on the sixth factor—whether the visual depiction is intended or designed to elicit a sexual response in the viewer—he maintains that this factor discusses only the producer's intent in creating the image and not whether "the production of the image 'involve[d] the use of a minor engaging in sexually explicit conduct.'" By "shift[ing] the inquiry from the minor's conduct to Enzminger's subjective thoughts," he asserts the district court inappropriately allowed the jury to convict "solely because the image was 'intended or designed to elicit a sexual response.'"

Defendant's concerns about the jury's reliance on the Dost factors are misplaced. We have emphasized before that a jury may consult the Dost factors as little or as much as it desires:

> the absence of [the Dost factors] is not dispositive. We held in Wolf that "all six factors need not be present in order to bring the depiction under the proscription of the statute," and we did "not hold that more than one Dost factor must be present to constitute a violation of 18 U.S.C. § 2251(a)." Whether an image depicts a lascivious exhibition of the genitals or pubic area instead turns on the "overall content of the visual depiction."

7

United States v. Wells, 843 F.3d 1251, 1254 (10th Cir. 2016) (first quoting Wolf, 890

F.2d at 245 n.6; and then quoting Dost, 636 F. Supp. at 832).  The district court's

instruction properly conveyed this flexibility, stating that "[a] visual depiction need not

involve all of these factors to be a lascivious exhibition, and it is for [the jury] to decide

the weight or lack of weight to be given to any of these factors."  The district court gave

this reproof to emphasize to the jury that it "must consider the overall content of the

visual depiction" to determine if the picture Enzminger sent was sexually explicit conduct

and a lascivious exhibition.  Both statements accurately state the law on how we have

explained juries should use the Dost factors, and did not encourage the jury to convict

solely based on one factor as Defendant fears.

We also reject Defendant's suggestion that we limit using the Dost factors to

child-pornography production cases.  Both child-pornography receipt and production

cases turn on whether images either produced or received are lascivious, which we have

clarified "is not a characteristic of the child photographed but of the exhibition which the

photographer sets up for an audience that consists of himself or [like-minded]

pedophiles."  Wells, 843 F.3d at 1255 (quoting Wolf, 890 F.2d at 245).  Lasciviousness

turns, therefore, on the "overall content" of the images.  Id. at 1257.  And "whether the

visual depiction is intended or designed to elicit a sexual response in the viewer" is

certainly relevant to determining the visual depiction's overall character.  Dost, 636 F.

Supp. at 832.  Although producers' intent will not always be relevant in child-

pornography receipt cases, neither is it always relevant in production cases.  Wolf, 890

F.2d at 245 ("[A]ll six factors need not be present in order to bring the depiction under

8

the proscription of the statute"). The district court did not err in using the Dost factors in this case.

Third, Defendant argues "[t]he district court's instruction to the jury that it could 'consider whether the visual depictions would appeal to persons who are sexually attracted to children' was also extremely problematic." He notes that he "cannot find this language in any federal appellate decision," and that the fact "that a pedophile would be attracted to an image does not make that image one that involved the use of a minor engaging in sexually explicit conduct." He argues this expands the child-pornography law's scope too broadly because "virtually all depictions of children, [who to] pedophiles are highly eroticized sexual objects, are likely to draw a deviant response." Defendant notes that the government also introduced much evidence that he had pedophilic tendencies, and warns that the instructional language "easily could have convinced the jury to convict . . . because the image appealed to [him]."

But the viewer's response to the image, whether because of their pedophilic tendencies or not, can be relevant to determine if an image's overall content is lascivious. Indeed, "a 'lascivious exhibition of the genitals or pubic area' of a minor necessarily requires only that the material depict some 'sexually explicit conduct' by the minor subject *which appeals to the lascivious interest of the intended audience*." United States v. Helton, 302 F. App'x 842, 848 (10th Cir. 2008) (quoting United States v. Knox, 32 F.3d 733, 747 (3d Cir. 1994)) (emphasis added). The district court's instruction that the jury "may consider whether the visual depictions would

9

appeal to persons who are sexually attracted to children" largely recapitulates the sixth Dost factor, which asks "[w]hether the visual depiction is intended or designed to elicit a sexual response in the viewer."  Just as the sixth Dost factor is one factor among many in deciding whether an image's overall content is lascivious, the district court's observation that the jury could consider whether Enzminger's image could appeal to those with pedophilic tendencies was just one statement among several in the jury instructions.  We review jury instructions as a whole, considering the context in which the district court used specific statements.  United States v. Heckard, 238 F.3d 1222, 1232 (10th Cir. 2001).  The district court read the statement to which Defendant objects after listing the Dost factors' wide-ranging indicia of lasciviousness.  A reasonable jury would not believe the law required it to find a particular image was lascivious merely because it could appeal to those with pedophilic tendencies because the instructions as a whole made clear that this was just one factor among many it could consult to determine lasciviousness.

Finally, Defendant contends the district court included too much of the relevant statute in its instructions.  As he correctly notes, the district court

> instructed the jury that "child pornography" included: (1) "a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct"; and (2) and any "visual depiction [that] has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct."

That language came from 18 U.S.C. §§ 2256(8)(B) and (C), even though the government charged Defendant under 18 U.S.C. § 2256(8)(A).  Defendant argues this

10

inappropriately confused the jury because 18 U.S.C. §§ 2256(8)(B) and (C) deal with virtual child pornography and altered photographs, whereas 18 U.S.C. § 2256(8)(A) deals only with unaltered images of real children. He argues that including the irrelevant language "effectively told the jury that it could convict even if the image of Enzminger's son was not lascivious" but "was either (1) a 'computer image' that was 'indistinguishable from that of a minor engaging in sexually explicit conduct'; or (2) a 'visual depiction [that] ha[d] been created to appear that an identifiable minor [was] engaging in sexually explicit conduct.'"

The district court did not err. Jury instructions that directly quote statutory language are erroneous in only rare cases, such as when they mislead or confuse the jury. See Summers v. Missouri Pac. R.R. Sys., 132 F.3d 599, 607 (10th Cir. 1997). No danger of that existed here. As all parties agree, the government premised its receipt-count case against Defendant entirely on the picture of the six-year-old boy Enzminger sent Defendant. So although the jury heard that it could convict Defendant if that image was "indistinguishable from[] that of a minor engaging in sexually explicit conduct" or "ha[d] been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct," the jury would not have convicted under this theory because the only potentially sexually explicit image the government presented was the photograph of the naked six year-old boy. As Defendant himself states, the receipt charge "involved an image of a real child (Enzminger's son), and the government did not introduce any evidence, or make any argument, that any other image that it introduced was virtual or morphed child

pornography." The 18 U.S.C. §§ 2256(8)(B) and (C) language the district court included in its instructions created no danger that the jury would be confused and believe it could convict Defendant under such a theory. The only evidence the jury had was a single unaltered photograph of a six-year-old boy, and jury instructions about virtual images or altered photographs would not have confused the jury into thinking it could convict based on evidence it did not have. We affirm Defendant's conviction on count one.

B.

Defendant challenges his second conviction for evidence sufficiency, arguing that the government failed to prove the images it recovered from his computer moved in commerce between states. Recognizing that "the language employed by the government in its indictments becomes an essential and delimiting part of the charge itself," he seizes on the fact that the government charged him with possessing child pornography "mailed, shipped and transported in interstate and foreign commerce." This language differed from his first count, which charged him with receiving child pornography "in and affecting interstate and foreign commerce." Defendant argues omitting "and affecting" changed the government's burden, requiring it not to prove the child pornography he possessed came from something affecting interstate commerce, but rather because of "movement across state lines." He contends that the government only proved he got the images on which it premised its possession conviction through the internet, which is not sufficient to show the images traveled across state lines.

We agree. The government summarized its argument on the "in interstate and foreign commerce" element of the possession charge in its closing:

> You get [the interstate commerce element] from two different ways. First, [in] the interview he admits that he gets it through Tumblr or the internet. Those are the only ways in which he describes getting it. And that's consistent with what we have seen in the chats, that he's requesting it, so that makes sense. Can you reasonably infer? Yep, he got it through the internet, through that facility of interstate or foreign commerce. But you also see from the messages, the images themselves, remember, we talked about the .com that appears on a couple of those. That means it's coming from a website. That it's out there on a commercial site that somebody can go to to see this stuff. All right? Now that doesn't mean it's a legal thing because it's out there. But that is an indicator for you that this is not something that didn't come through anything other than the internet.

In other words, the government argued the images recovered from his computer must have traveled between states because they came from the internet, and as the internet is a "facility of interstate or foreign commerce" the jury could reasonably infer the images traveled interstate.

We have rejected this argument before. In United States v. Schaefer, 501 F.3d 1197 (10th Cir. 2007), we reversed a defendant's child-pornography conviction based on subscriptions to pornographic websites and several pornographic images authorities found on his computer. 501 F.3d at 1198. We explained that "[t]he government did not present evidence of such movement; instead, the government only showed that [the defendant] used the Internet." Id. at 1201. Although "in many, if not most, situations the use of the Internet will involve the movement of communications or materials between states . . . this fact does not suspend the need for evidence of this interstate movement." Id. The government need not prove that

13

defendants knew the child pornography they possessed moved in interstate commerce, but it must nevertheless prove that the visual content in that pornography "has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer." 18 U.S.C. § 2252A(a)(5)(B). And "one individual's use of the internet, 'standing alone,' is insufficient to establish that a web transmission 'traveled across state lines in interstate commerce.'"[2] United States v. Kieffer, 681 F.3d 1143, 1153 (10th Cir. 2012). Because the government charged Defendant for possessing only the images found on his computer allegedly obtained from the internet and argued it satisfied its interstate-commerce burden by doing so, it failed to meet its burden under Schaefer and its progeny.[3]

The government attempts to extricate itself from this failure by arguing that no substantive difference exists between the phrases "in interstate and foreign

---

[2] We later partially overruled Schaefer, the case that established this proposition, in United States v. Sturm, 672 F.3d 891 (10th Cir. 2012). But Sturm held only that the government need only show that the image's visual content moved in interstate commerce rather than that the specific image a defendant possessed did so. 672 F.3d at 901–02. Sturm did not undermine Schaefer's other holding that the government cannot prove an image traveled between the states by merely showing that a defendant got it from the internet. Kieffer, 681 F.3d at 1153.

[3] The government did not use the image of the six-year-old child Enzminger sent to Defendant from North Dakota to Kansas as part of its possession charge. The government got closest to discussing interstate travel related to the images upon which it based its possession charge when it questioned a single witness about where Tumblr's servers were. The witness responded that the company's "legal process" was in New York. The government never expanded upon this line of inquiry, and nothing about where Tumblr's legal process and servers are indicates necessarily that the visual content for which it sought to convict Defendant traveled between states.

14

commerce" and "in and affecting interstate and foreign commerce" in the indictment. It contends that its "omission of the words 'and affecting' [was] legally inconsequential because the language alleging that Defendant possessed images [said] that [the images] 'had been mailed, shipped and transported in interstate and foreign commerce *by any means*, including by computer,'" which "necessarily alleged *all means* by which an image could be transported." Therefore, the government argues it "did not have to prove that the transportation of the image affected interstate commerce," just that someone transported it using a "means or facility of interstate or foreign commerce."

The government's creative reading of its indictment does not withstand scrutiny. The indictment charged that Defendant "knowingly possessed . . . any computer disk and other material which contained an image of child pornography . . . that had been mailed, shipped and transported in interstate and foreign commerce by any means." Merely showing that a computer is a means of interstate commerce does not show that the image was "shipped and transported" in interstate commerce. The "by any means" language upon which the government places so much emphasis indicates only that the government could show the image was "shipped and transported" between states by any method, not that it need show only that authorities found the image in a means of interstate commerce. The government would be correct only if the indictment charged that Defendant had "knowingly possessed an image of child pornography in any means of interstate or foreign commerce." But "the language employed by the government in its indictments becomes an essential

15

and delimiting part of the charge itself, such that if an indictment charges particulars, the jury instructions and evidence introduced at trial must comport with those particulars." United States v. Miller, 891 F.3d 1220, 1235 (10th Cir. 2018) (quoting Farr, 536 F.3d at 1181). The government's indictment charged Defendant with possessing pornographic images transported in interstate commerce, and it failed to meet its burden when it proved only that the computer on which authorities found the pornographic images was a means of interstate commerce.[4]

The government next argues that it presented enough evidence for the jury to reasonably infer that some of the images traveled between states. It points out that "[a]t least three of the images had commercial markings indicating the images had at some point in time been on commercial websites" and therefore "had been transported from those websites to Defendant's laptop." The government contends the jury could have inferred that "at some point before they had arrived on Defendant's laptop or cell phone, they had been accessed outside of Kansas and had crossed state lines," which relies not only on the fact that they came from the internet

---

[4] The government's indictment language was nearly identical to the indictment language in Schaefer. 501 F.3d at 1199 ("visual depiction had been mailed, shipped, and transported in interstate or foreign commerce by computer or other means"). In that case we also rejected the argument that this language was the same as "affecting commerce" and "facility of interstate commerce." Schaefer, 501 F.3d at 1201. The government argues Schaefer is no longer good law because of an intervening statutory change, but we decided similar cases after the statutory change the government cites and clarified that "Schaefer still stands for the proposition that one individual's use of the internet, 'standing alone,' is insufficient to establish that a web transmission 'traveled across state lines in interstate commerce.'" Kieffer, 681 F.3d at 1153 (discussing the statutory change).

16

but also "that the images were commercially available to a large number of persons outside of Kansas who could access them from locations outside of Kansas."

This argument relies too much on speculation. The jury could not reasonably have inferred that someone *may* have produced the images in another state and *may* have sent them to Defendant's computer from those states without more evidence because it was just as likely the images' visual content came from Kansas and never left the state. See United States v. Smith, 135 F.4th 905, 913–14 (10th Cir. 2025) ("Because each inference was just as likely as the others, it was impossible for a jury to find guilt beyond a reasonable doubt") (citing United States v. Lovern, 590 F.3d 1095, 1107 (10th Cir. 2009)). The government's observation that "[a]t least three of the images had commercial markings" and had therefore been on commercial websites from which they could have traveled through interstate commerce merely repackages the same argument that the internet is a facility of interstate commerce we have already rejected. Kieffer, 681 F.3d at 1153. That the images came from a commercial website does not necessarily show they traveled through interstate commerce. Id.

The government did not show beyond a reasonable doubt that the images' visual content upon which it premised Defendant's possession charge traveled in interstate or foreign commerce. As this was an essential element of the crime for which the jury convicted him, we reverse Defendant's conviction on the possession

count and remand to the district court to enter acquittal on the second count.

Entered for the Court


Joel M. Carson III
Circuit Judge