996 P.2d 741

STATE of Arizona, Appellee,

v.

Shawn F. PANVENO, Appellant.

No. 1 CA–CR 98–0071.

Court of Appeals of Arizona,
Division 1, Department B.

May 27, 1999.

Review Denied March 14, 2000.

Janet A. Napolitano, The Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, and Jacquelyn B. Eskay, Assistant Attorney General, Phoenix, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by Stephen R. Collins, ·Deputy Public Defender, Phoenix, for Appellant.

## OPINION

THOMPSON, Judge.

¶ 1 Shawn Frank Panveno (defendant) appeals his convictions and sentences for driving with a suspended license and aggravated driving with a blood alcohol concentration (BAC) of 0.10 or more within two hours of driving or being in actual physical control of a vehicle. We have jurisdiction pursuant to Ariz. Const. art. VI, § 9, and Ariz.Rev.Stat. Ann. (A.R.S.) §§ 12–120.21, 13–4031, and 13–4033(A). For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 We review the facts presented at defendant's trial in the light most favorable to sustaining the jury's verdicts. *See State v. Atwood,* 171 Ariz. 576, 596, 832 P.2d 593, 613 (1992) (citing *State v. Guerra,* 161 Ariz. 289, 293, 778 P.2d 1185, 1189 (1989)).

¶ 3 Defendant had worked at a restaurant from 5:00 p.m. to 11:30 p.m. on the evening of March 17, 1997. Before leaving work, he had eaten french fries and "some ahi sliders" or small tuna sandwiches. Defendant then met a co-worker at a Tempe nightclub. Between 12:00 a.m. and 1:00 a.m., he consumed three 14 or 16 ounce glasses of beer and one shot of 70–proof Jagermeister.

¶ 4 Michael Velten, a Tempe police officer, stopped defendant at 1:29 a.m. on March 18, 1997. He had noticed defendant's vehicle when it accelerated away from a gap of other vehicles. Officer Velten also noticed that the vehicle was weaving within the curb lane. At trial, the officer testified that weaving within a lane can be a sign of alcohol impairment.

¶ 5 Officer Velten caught up to the vehicle, remained four car lengths behind it, and continued following it. The posted speed limit in the area was 40 miles per hour, but defendant was driving between 50 and 55 miles per hour. Later, defendant's weaving within the curb lane became more pronounced and, on several occasions, came within inches of colliding with a three foot high barrier wall that separates the lane from a pedestrian walkway.

¶ 6 At that point, Officer Velten activated his emergency lights. He was approximately three car lengths behind defendant on his marked police motorcycle. The officer positioned himself just to the left of defendant's vehicle within the curb lane to give defendant an opportunity to clearly see him. However, defendant did not slow down and was seemingly unaware of Officer Velten's presence. The officer testified that this is another possible sign of alcohol impairment.

¶ 7 The officer then activated his siren. Defendant still continued driving and eventually slowed down, but did not stop or yield to the right and continued north on Scottsdale Road toward the eastbound on-ramp for Highway 202. Defendant eventually stopped approximately 800 feet from the point at which Officer Velten first activated his siren. Only after the officer's motorcycle approached the vehicle did defendant pull over to the right, another sign of possible alcohol impairment.

¶ 8 Officer Velten observed that defendant's eyes were bloodshot and watery. He also detected alcohol on defendant's breath, and defendant's speech was slurred. The officer testified that these are also possible signs of alcohol impairment. When asked, defendant told the officer he had drunk a Miller Lite beer.

¶ 9 When Officer Velten asked for defendant's driver's license, vehicle registration, and insurance, defendant gave him an Arizona picture identification card. Defendant then provided the requested documents and was asked to exit the vehicle. He staggered as he stepped down and grabbed the driver's side door for balance.

¶ 10 Officer Velten asked defendant to submit to some field sobriety tests, and defendant agreed. Defendant was first asked to perform a walk and turn test. After indicating that he understood how to perform the test, defendant was unable to stay in position and stepped off the line twice. His balance was unsteady and he used his arms to maintain balance.

¶ 11 Defendant next performed the one leg stand test, during which his body was rigid, his arms were tightly clenched against his body, and he put his foot down and swayed while trying to maintain balance. The officer indicated that these were signs of alcohol impairment.

¶ 12 Officer Velten next asked defendant to perform the Rhomberg modified test, which required defendant to stand in a particular position with his hands down and not do anything until he was told. Defendant did not properly perform the test. During the finger to nose test, defendant was successful with his left hand. However, during the next five tries, he was unable to perform properly. These are also signs of alcohol impairment according to Officer Velten. Finally, defen-

dant performed a finger count test. Defendant performed the test correctly with his left hand, but was unable to perform properly with his right hand.

¶ 13 Officer Velten then placed defendant under arrest for DUI. Defendant's license was suspended at the time of his arrest.

¶ 14 Defendant was then transported to the command post. Officer Velten asked defendant to submit to an Intoxilyzer breath test to determine his BAC. Defendant agreed to submit to the test, but failed to perform the test as instructed. Rather than taking the mouthpiece into his mouth, cupping his lips around it, and blowing breath into the machine until the officer told him to stop, defendant puffed his cheeks out but never deflated them. Defendant maintained that position for several seconds when it became obvious that he was not performing the test properly. After Officer Velten informed defendant that not properly blowing into the machine would amount to a refusal, defendant released his breath and air did go into the breath tube, but as soon as the audible tone sounded, indicating he was performing the test properly, defendant stopped blowing. Therefore, the machine registered an improper reading. Defendant subsequently refused to perform the test a second time. The officer then received a telephonic search warrant authorizing him to obtain a sample of defendant's blood.

¶ 15 A phlebotomist performed the blood draw at approximately 3:31 a.m., slightly more than two hours after the police stopped defendant. Defendant's BAC at the time of the blood draw was 0.154. The state's toxicologist performed a retrograde analysis to determine defendant's BAC at 3:26 a.m., approximately five minutes before the blood draw, which was within two hours of the time that defendant had been driving or in actual physical control of his vehicle. The retrograde analysis yielded a BAC of 0.155.

¶ 16 The Maricopa County Attorney's Office charged defendant by information with count one, aggravated DUI with a suspended driver's license in violation of A.R.S §§ 28–692(A)(1) and 28–697(A)(1), and count two, aggravated driving with a BAC of 0.10 or more within two hours of driving or being in actual physical control of a vehicle, in violation of A.R.S. §§ 28–692(A)(2) and 28–697(A)(1).[1]

¶ 17 At trial, defendant called Chester Flaxmayer, a criminalist, as an expert witness on the effects of alcohol on the human body. Flaxmayer testified that neither he nor any other member of the scientific community could determine the amount of alcohol defendant would have absorbed into his blood by the time he was stopped by the police. He further testified that, given the amount and timing of the alcohol defendant consumed, his BAC could have been anywhere between a minimum of 0.026 and a maximum of 0.185 while he was driving, depending upon the amount of food in his stomach and the rate at which his body both absorbed and eliminated the alcohol. Flaxmayer thus concluded that "it is a realistic possibility" that defendant's BAC was under 0.10 at the time of driving.

¶ 18 The jury acquitted defendant of aggravated DUI in count one but convicted him of the lesser-included offense of driving on a suspended license, a class 1 misdemeanor. The jury also convicted defendant of count two, aggravated driving with a BAC of 0.10 or more within two hours of driving.

¶ 19 The trial court subsequently sentenced defendant to time served on the misdemeanor count. It suspended sentence on the aggravated DUI conviction and imposed four years' probation, with four months' incarceration as a condition of probation. Defendant timely appealed to this court.

### DISCUSSION

¶ 20 Defendant argues on appeal that the state presented insufficient evidence that defendant had a BAC of 0.10 or higher at the time he was actually driving. Defendant bases his argument on A.R.S. § 28–692(B) (1997), which provides:

---

1. Effective October 1, 1997, the legislature amended A.R.S. §§ 28–692 and 28–697 and re- numbered them as §§ 28–1381 and 28–1383.

It is an affirmative defense to a charge of a violation of subsection A, paragraph 2 of this section if the person did not have an alcohol concentration of 0.10 or more at the time of driving or of being in actual physical control of a vehicle. If a defendant produces some credible evidence that his alcohol concentration at the time of driving or being in actual physical control of a vehicle was below 0.10, the state must prove beyond a reasonable doubt that the defendant's alcohol concentration was 0.10 or more at the time of driving or being in actual physical control of a vehicle....[2]

Defendant maintains that Flaxmayer's testimony constituted "some credible evidence" that defendant's BAC was below 0.10 at the time he was stopped. Thus, he argues that the state was required to prove beyond a reasonable doubt that his BAC was in fact 0.10 or above at the time of driving.

¶ 21 In response, the state argues that Flaxmayer's testimony did not constitute "credible evidence" that defendant's BAC was below 0.10 at the time of driving. The state alternatively asserts that it presented sufficient evidence that defendant's BAC was 0.10 or above at the time of driving.

■ ¶ 22 In reviewing a claim of insufficient evidence, we consider the evidence, and the inferences to be drawn from it, in the light most favorable to sustaining the jury's verdict. *See State v. Arredondo,* 155 Ariz. 314, 316, 746 P.2d 484, 486 (1987); *State v. Hall,* 129 Ariz. 589, 593, 633 P.2d 398, 402 (1981). We will not reverse the trier of fact's decision if substantial evidence supports it. *See Atwood,* 171 Ariz. at 597, 832 P.2d at 614. "Substantial evidence" exists if reasonable persons may fairly differ as to whether certain evidence establishes a fact in issue. *See id.* (quoting *State v. Tison,* 129 Ariz. 546, 553, 633 P.2d 355, 362 (1981)). Thus, "[t]o set aside a jury verdict for insufficient evidence it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support the conclusion reached by the jury." *Arredondo,* 155 Ariz. at 316, 746 P.2d at 486 (citation omitted).

¶ 23 We consider first whether defendant presented "some credible evidence" that his BAC was actually below 0.10 at the time of driving. Defendant argues that the recent decision in *State v. Cannon,* 192 Ariz. 236, 963 P.2d 315 (App.1998), supports his position that Flaxmayer presented "some credible evidence" that his BAC could have been below 0.10 at the time of driving.

¶ 24 *Cannon* also involved the testimony of Flaxmayer, who was unable to perform a proper retrograde analysis in that case because he needed to know when the defendant consumed his last drink or an estimate of how much alcohol he had consumed within the fifty minutes prior to driving. *Id.* at 239, 963 P.2d at 318. Flaxmayer concluded that " '[b]ased upon the information that [was] in the police report, including time of the tests, time of driving, and the test results,' " there was information to indicate that defendant could have been below 0.10 at the time of driving. *Id.* We held that Flaxmayer's testimony constituted "some credible evidence" that the defendant's BAC was below 0.10 at the time of driving. *See id.*

■ ¶ 25 Here, Flaxmayer testified that, at the time defendant was stopped by the police, his BAC could have ranged anywhere from 0.026 to 0.185. Flaxmayer further testified that in his expert opinion, it was impossible to determine where within that range defendant's BAC fell during the time of driving. Thus, Flaxmayer concluded that "it is a realistic possibility" that defendant's BAC was under 0.10 at the time of driving. However, even though Flaxmayer could not offer an expert opinion pinpointing defendant's exact BAC while he was driving, the jury was free to draw its own conclusion.

¶ 26 We conclude that defendant presented "some credible evidence" that his BAC was below 0.10 at the time of driving. Therefore, we must also consider whether the state presented sufficient evidence from which the jury could have found beyond a reasonable doubt that defendant's BAC was in fact 0.10 or greater at the time he was driving pursuant to A.R.S. § 28–692(B). We hold that the state presented such evidence.

2. The trial court instructed the jury on this affirmative defense.

¶ 27 *Cannon* is distinguishable on this point. In *Cannon*, the state's expert was unable to perform a retrograde analysis and conceded that she could not rebut defendant's affirmative defense. 192 Ariz. at 239, 963 P.2d at 318. Here, however, the state's toxicologist did not concede that a retrograde analysis could not be performed. Further, there was ample evidence here from which the jury could reasonably determine that defendant's BAC was 0.10 or more at the time of driving.

¶ 28 In *State ex rel. McDougall v. Superior Court*, 178 Ariz. 544, 546, 875 P.2d 203, 205 (App.1994), we held that whether a defendant's BAC at the time of driving was 0.10 or more is a question for the jury. In *McDougall*, the fact that a breathalyzer device registered the defendant's BAC at 0.10 or above did not conclusively establish that the defendant was driving at such a level. *Id.* The jury heard evidence indicating an inherent margin of error with the testing device, and "it was up to the jury to make the inference whether the test result combined with the other evidence showed intoxication at the time of the arrest." *Id.* The inherent margin of error was only one piece of evidence presented to overcome the statutory presumption of impairment in A.R.S. § 28–692(A)(2). *See id.* Other evidence indicated "that [d]efendant weaved three times, had a moderate odor of alcohol on his breath, had bloodshot and watery eyes, had slightly slurred speech, walked with a slight sway, and clenched his fist at the officer when arrested." *Id.*

¶ 29 Likewise, in this case, Flaxmayer's conclusion regarding defendant's BAC is not the only evidence the jury had to consider when determining whether he drove with a BAC of 0.10 or greater. The jury heard Officer Velten's testimony that defendant weaved within the curb lane, drove in excess of the posted speed limit, almost collided with a barrier wall, failed to stop after the officer activated his emergency lights, stopped on the highway on-ramp, had bloodshot and watery eyes, smelled of alcohol, had slurred speech, admitted to drinking Miller Lite beer that evening, had difficulty exiting his vehicle, failed field sobriety tests, refused to perform the breath test properly, and had a BAC of 0.155 nearly two hours after he was stopped by police. Therefore, the jury had sufficient evidence from which to infer that defendant had a BAC of 0.10 or greater at the time of driving or being in actual physical control of his vehicle.[3] For this reason, defendant's attempt to use *State v. Gallow*, 185 Ariz. 219, 914 P.2d 1311 (App.1995), to his advantage fails. There, Division Two found that the state did not show beyond a reasonable doubt that the defendant's BAC at the time of driving was 0.10 or above. *See id.* at 221, 914 P.2d at 1313. However, unlike this case, in *Gallow*, there was no evidence from which the jury could infer the defendant's BAC. *Id.*

## CONCLUSION

¶ 30 We affirm defendant's convictions and sentences.

CONCURRING: JAMES B. SULT, Presiding Judge, and SARAH D. GRANT, Judge.

---

3. Although defendant was acquitted of driving under the influence, the jury was not required to render consistent verdicts. *See State v. Zakhar*, 105 Ariz. 31, 32, 459 P.2d 83, 84 (1969).