NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

WILLIAM JORDAN, *Appellant*.

No. 1 CA-CR 17-0359
FILED 4-3-2018

Appeal from the Superior Court in Yavapai County
No.  V1300CR201680129
The Honorable John David Napper, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Terry M. Crist, III
*Counsel for Appellee*

Craig Williams, Attorney at Law, PLLC, Prescott Valley
By Craig Williams
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge Patricia A. Orozco[1] joined.

_____

**B R O W N**, Judge:

¶1          William Jordan appeals his convictions for one count of manslaughter, four counts of aggravated DUI, and one count of criminal damage.  Finding no reversible error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2          In the afternoon or early evening of February 8, 2014, Jordan and S.S. were driving on an unpaved narrow road in the Coconino National Forest.  They pulled over to allow S.S. to urinate, but after continuing down the road through some "switchbacks," their car "fishtailed" and plunged over the edge, rolling down the hillside.  Two witnesses close by raced to the crash site, called 9-1-1, and observed Jordan, whose speech was "slurred" and who smelled of alcohol, holding S.S. as she lay unconscious, struggling to breathe.  S.S. died shortly thereafter.

¶3          Law enforcement and other emergency personnel arrived "a long while" later and treated Jordan, who was walking around, for two rib fractures.  They observed the heavily damaged sport utility vehicle ("SUV"), owned by S.S., and beer cans strewn about the crash site.  After the SUV was taken to an evidence yard, officers found that the brakes worked properly and there was no evidence of blood.  A blood draw later revealed Jordan's blood alcohol content was between 0.16 and 0.22 within two hours of the accident, and an autopsy showed that S.S. experienced numerous injuries and died from "multiple blunt force trauma."

¶4          The State charged Jordan with one count of manslaughter, six counts of aggravated DUI, and one count of criminal damage.  At trial, the State moved to dismiss two counts of aggravated DUI, which the court granted.  After the State rested, Jordan moved for a judgment of acquittal

_____

[1]     The Honorable Patricia A. Orozco, retired Judge of the Arizona Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

under Arizona Rule of Criminal Procedure ("Rule") 20, arguing the State could not prove he was driving the vehicle because the circumstantial evidence pointed to no other fact that could be "prove[d] beyond a reasonable doubt." The superior court denied the motion, and the defense rested without introducing additional evidence.

¶5        The jury found Jordan guilty on all counts. Sentencing him as a repetitive offender and ordering the sentences to run concurrently, the superior court sentenced Jordan to aggravated sentences of 17 years for manslaughter, 12 years for each of the four counts of aggravated DUI, and 6 years for criminal damage. This timely appeal followed.

## DISCUSSION

### A.        Rule 20 Motion and Sufficiency of the Evidence

¶6        Jordan argues the evidence is insufficient to show he was driving the SUV when the accident occurred and that the superior court, on that basis, erred in denying his motion for a directed verdict of acquittal under Rule 20. Neither party disputes that to sustain each of Jordan's convictions, the State was required to establish beyond a reasonable doubt that Jordan was driving the SUV at the time of the accident.

¶7        We review de novo a claim of insufficient evidence, whether raised on appeal or in a Rule 20 motion, although our review is limited to whether substantial evidence exists to support the verdict. *State v. West*, 226 Ariz. 559, 562-63, ¶¶ 15, 19 (2011); *see also State v. Hallman*, 137 Ariz. 31, 38 (1983) ("[A] judgment of acquittal prior to verdict may be entered only if there is no substantial evidence to warrant a conviction."); *State v.*, 196 Ariz. 332, 335, ¶ 22 (App. 1999) ("We will not reverse the trier of fact's decision if substantial evidence supports it."). "Substantial evidence is that which reasonable persons could accept as sufficient to support a guilty verdict beyond a reasonable doubt." *State v. Davolt*, 207 Ariz. 191, 212, ¶ 87 (2004). Direct and circumstantial evidence are given equal probative value. *State v. Bible*, 175 Ariz. 549, 560 n.1 (1993). "[W]e view the evidence in the light most favorable to sustaining the verdict, and we resolve all inferences against the defendant." *Davolt*, 207 Ariz. at 212, ¶ 87. Here, contrary to Jordan's assertion, substantial evidence shows he was driving the SUV.

¶8        Michael Loza, a fire captain and paramedic, testified that when he spoke to Jordan at the crash site, Jordan complained of "left-sided rib pain" and was "take[n] . . . for medical treatment." Jordan was walking around and able to walk up the hill by himself.

¶9 Adam Hansen, a deputy sheriff, testified that a large boulder, about the size of a desk and approximately 50 feet from the road, "looked like it had been hit by the vehicle." S.S.'s body was "about 15 feet" from the SUV on the passenger's side of the vehicle; she had no visible seatbelt injuries. At the crash scene, Hansen assumed S.S. was the passenger based mainly on "the amount of damage and where the damage occurred on the vehicle and the injuries that she sustained." The passenger side of the vehicle was "crushed down" while the driver's side was "virtually in tact [sic]." Hansen, about the same height as Jordan (six feet), was able to sit comfortably in the driver's seat. A person five feet, five inches, about S.S.'s height, would not, "consistent with [Hansen's] experience," have been "able to operate the pedals with the seat in that position."

¶10 Marvin Cline, a patrol sergeant with "advanced collision training," testified the accident was a rollover and that the debris showed a general path of where the SUV traveled. The SUV, striking "at least one large object," received "contact damage" (damaged caused from hitting an object) on the passenger's side of the vehicle and "[v]ery little damage" to the "driver's side of the vehicle." The object coming in contact with the passenger door "peeled it open like a can." Cline, working in law enforcement since the year 2000, had never seen a situation where both people were ejected and where one person died and the other person was able to walk around with no serious injuries. Cline also testified that Jordan's statement telling S.S. to let him drive was the beginning of an admission to driving, and that when Jordan stated, "I lied about it and I've been lying about it since it happened," he was talking about "driving."

¶11 Jordan told Cline and a detective that he and S.S. were going to "the hot springs" when the "washboard" took them "off the edge." After they "[d]rove for a little ways," Jordan told S.S. to let him drive; S.S. "was still driving" while they were smoking. Although he "[p]robably" took over driving when "she got out to pee," Jordan stated, "I mean if you were asking how many miles in I don't know." Jordan seemingly agreed to the following scenario laid out by Cline:

> And we know about where that is because there's a forest service sign and the witnesses said that they'd saw [sic] her pee and they pulled off on that forest service and right after they passed you and saw you guys pass and you were driving. So that's probably where you switched. . . . [T]hose are minor details. . . . [L]ike I said the idea that you didn't uh you guys didn't get drunk and [] smoke a bunch of marijuana down in the valley and then you drove all the way up here

... with reckless disregard for anybody's care. You know the
[] fact of the matter is you [] guys had partied some and then
you realized I'm in better shape than she is ... and we're close.
You know there's a difference there.

Additionally, during a discussion on whether Jordan wanted to tell Cline and the detective anything that they could put in their report or whether he wanted to "say anything" to the "family of . . . the kids," Jordan disagreed with Cline's statement that Jordan was honest: "I really wasn't honest[.]  I lied about it and I've been lying about it since it happened[.]"  Jordan added, "It kills me that she's not here . . . and that it's my fault that she's not here."

¶12        Dr. Mark Fischione, a forensic pathologist, testified that S.S. had a laceration and "lots of abrasions" on her head; an "avulsion"[2] six inches by five inches on the left side of her back, which penetrated to her rib cage; torn lung tissue; lacerations on her lung, spleen, and liver; multiple rib fractures; abrasions on her back, front, arms, and legs; and a fractured pelvis.  S.S.'s injuries, as well as no blood in the vehicle, were "consistent with her not staying in that [SUV]," meaning she was "catapulted out of the vehicle."  Because the "driver's side [was] pretty pristine" and the passenger side had sharp metal, and because of "several things that point to her being the passenger and really none that point to her being the driver," Fischione believed S.S. was in the passenger seat at the time of the accident.  The avulsion on S.S.'s back was caused by a sharp object, such as "sharp metal . . . as she flew from the vehicle" or "something sharp as she was catapulted out beyond the vehicle"; a rock likely did not cause the avulsion because there would have been "bruising around it."  Nothing on the driver's side of the vehicle was "sharp enough" to have caused the injury to S.S.'s shoulder, yet sharp material on the passenger's side could have caused the injury.  A person in the passenger seat, or who had been ejected during the rollover, would not have survived the crash in this case with only "minor injuries."  Jordan suffered "minor injur[ies]" (two rib fractures on his left side), which were "consistent with his left side hitting up against the inside part of the door" on the driver's side.

¶13        C.W. and V.E., on a road trip together in Arizona, each testified that before the crash they passed an SUV, saw a female urinating on the passenger side of the road, and another person in the driver's seat. C.W. did not know at the time whether the person in the driver's seat was

---

[2]        Fischione described an "avulsion" as the "tearing of the skin, going deep into the body."

male or female, but V.E. saw a male in the driver's seat. Both went to the scene of the accident, saw the vehicle was the SUV they had passed earlier, and saw that the only occupants were a man and a woman. Although Jordan told her S.S. was driving, V.E. did not believe him at the time.

¶14 Given the circumstantial evidence outlined above, together with Jordan's arguably incriminating statements made to the detectives, reasonable persons could find beyond a reasonable doubt that Jordan was driving the SUV at the time of the accident. Unlike Jordan suggests in his briefing, accident reconstruction is not necessarily required to prove that he was driving the SUV. And even assuming the jury did not consider Jordan's statements to Cline as an admission that he was driving, the circumstantial evidence is sufficient to show Jordan was indeed driving when the accident occurred. Therefore, substantial evidence supports the jury's verdicts and the court did not abuse its discretion in denying Jordan's Rule 20 motion.

¶15 Jordan argues in his opening and reply briefs that several pieces of evidence or testimony are "conflicting," "hyperbole," "not believable," "biased," not credible or truthful, and otherwise untrustworthy. These are jury considerations unsuited for appellate review. *See State v. Williams*, 209 Ariz. 228, 231, ¶ 6 (App. 2004) ("[I]t was for the jury to weigh the evidence and determine the credibility of the witnesses.").

¶16 In his reply brief, Jordan abandoned the arguments raised in his opening brief that portions of C.W.'s and V.E.'s testimonies were admitted in violation of Arizona Rules of Evidence 403 and 404(b), stating those rules "have no bearing on the case." Thus, we do not consider them. *See State v. Foshay*, 239 Ariz. 271, 273 n.2, ¶ 5 (App. 2016) (declining to consider an argument in part because the appellant "abandoned" the "argument in his reply brief").

¶17 Jordan also asserts that (1) he did not "receive a fair trial"; (2) portions of C.W.'s and V.E.'s testimonies were inadmissible hearsay with "no indicia of reliability . . . from the un-named source(s)"; (3) the court erred in "not allow[ing] further inquiry or answers" regarding the alleged inadmissible portions of C.W.'s and V.E.'s testimonies; and (4) Dr. Fischione testified "about areas outside of his expertise." We find these assertions waived because Jordan fails to develop them. *See State v. Moody*, 208 Ariz. 424, 452 n.9, ¶ 101 (2004) (finding waiver because the defendant "[m]erely mention[ed] an argument"); *State v. Greenberg*, 236 Ariz. 592, 598, ¶ 24 (App. 2015) (finding an argument waived because the defendant did not "present

significant arguments, supported by authority, setting forth his position" (internal quotation omitted)).

¶18        To the extent Jordan suggests the testimony given by C.W. and V.E. constitutes fundamental error, we find no prejudice. *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 20 (2005) (requiring defendant to establish error and prejudice in fundamental error review).  Jordan argues their testimony suggested he was a "bad man who lied," but the superior court sustained Jordan's objection after C.W.'s testimony suggested Jordan was untruthful about having children.  Once the objection was sustained, C.W.'s and V.E.'s testimonies did not suggest Jordan was a "bad man who lied," but simply explained that they spoke to police after "read[ing] some things" or reading an article that caused them to no longer be concerned about "the children."  Additionally, prior to deliberations, the court instructed the jury as follows: "If the court sustained an objection to a lawyer's question, you must disregard it and any answer given."  We presume the jury followed the instruction and did not consider the answer suggesting Jordan was untruthful.[3] *See State v. Newell*, 212 Ariz. 389, 403, ¶ 69 (2006).

### B.        Arizona Rule of Evidence 106

¶19        On the third day of trial, Jordan's counsel asked the court for a ruling on whether one of Jordan's statements to a police officer, which was recorded in the officer's report, was admissible because he anticipated a hearsay objection.  Jordan, in response to an officer's question about "how the collision happened," told the officer that he and S.S. "were talking and that she said that 'I can't stop. I can't stop.'"  After oral argument on whether the statement was inadmissible hearsay, the court denied the motion to admit Jordan's "statements to the police officer about what the victim said during the accident."

¶20        Relying on Arizona Rule of Evidence 106, Jordan argues the superior court should have allowed him to introduce this evidence because the State introduced his "other statements" and S.S.'s statement during the accident was "an important factor in proving that [S.S.] was driving when the accident happened."

¶21        Although Jordan did not raise Arizona Rule of Evidence 106 in the superior court, he requests that we review this issue for fundamental

---

[3]        For the same reason, we find no prejudice in Jordan's assertion that the superior court erred in not striking C.W.'s answer after the objection was sustained, especially in the absence of a request to do so.

error. *See State v. Peltz*, 242 Ariz. 23, 27, ¶ 7 (App. 2017). "To prevail under this standard of review, a defendant must establish both that fundamental error exists and that the error in his case caused him prejudice." *Henderson*, 210 Ariz. at 567, ¶ 20. Fundamental error is "error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial." *Id.* at ¶ 19 (internal quotation omitted).

**¶22** Under Arizona Rule of Evidence 106, "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." "[H]owever, only the portion of a statement necessary to qualify, explain or place into context the portion already introduced need be admitted." *State v. Cruz*, 218 Ariz. 149, 162, ¶ 58 (2008) (internal quotation omitted).

**¶23** Here, Jordan fails to establish error, let alone fundamental, prejudicial error. As far as we can tell, his statement to police that S.S. said she could not stop at the time of the accident does nothing to qualify, explain, or place into context his other statements to police, and Jordan fails to show otherwise. Simply because the State used Jordan's other statements to show he had confessed does not mean all of Jordan's exculpatory statements must be admitted under this rule. *See id.* ("Rule 106 does not create a rule of blanket admission for all exculpatory statements simply because an inculpatory statement was also made."). And as the State contends, other witnesses testified that Jordan claimed S.S. was the driver.

**CONCLUSION**

**¶24** We affirm Jordan's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:  AA