IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

DAVID LEVY GREENBERG, *Appellant*.

No. 1 CA-CR 13-0445
FILED 2-12-2015

Appeal from the Superior Court in Coconino County
No. S0300CR201100784
The Honorable Cathleen Brown Nichols, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Craig W. Soland
*Counsel for Appellee*

By David G. Bednar, Flagstaff
*Counsel for Appellant*

**OPINION**

Judge John C. Gemmill delivered the opinion of the Court, in which Presiding Judge Samuel A. Thumma and Judge Randall M. Howe joined.

**G E M M I L L**, Judge:

¶1        David Levy Greenberg appeals his convictions and sentences totaling 340 years of incarceration for 20 counts of sexual exploitation of a minor, voyeurism, surreptitious photographing, videotaping, filming or digitally recording, and first-degree criminal trespass. He contends the confessions considered by the court in determining his guilt were involuntary and the trial court erred in finding them admissible. Because we find no reversible error, we affirm.

## BACKGROUND

¶2        We view the evidence in the light most favorable to sustaining the trial court's convictions and resolve all reasonable inferences in support thereof. *See State v. Karr*, 221 Ariz. 319, 320, ¶ 2, 212 P.3d 11, 12 (App. 2008).

¶3        Officer Z.R. of the Flagstaff Police Department responded to a report of residential trespass on August 27, 2009. Upon arrival, he was told that an adult male was seen peering through the window of the victim, a juvenile female, and he was given a description of the suspect as well as a license plate number. Officer Z.R. went to the suspect's address, which was "a short distance away" from the victim's home, and saw a vehicle bearing the license plate number observed at the victim's house. As he walked up to the door, he felt the hood of the car, which was still warm. The officer knocked on the door, and Greenberg answered. Greenberg matched the victim's description of the suspect, and according to Officer Z.R., Greenberg was "sweaty" and "nervous." Greenberg denied having been at the victim's house and stated that he had been at work until 30 minutes before police arrived. His roommate, however, stated Greenberg had arrived 10 minutes before the officers. Shortly thereafter, the victim positively identified Greenberg's vehicle but was unable to positively identify the suspect. Based on the evidence linking his vehicle to the crime scene and the fact that Greenberg had previously been contacted for allegedly following and surreptitiously photographing women in the Cline Library at Northern Arizona University ("NAU"), Officer Z.R. asked Greenberg to accompany him to the police station to speak with a detective. Officer Z.R. told Greenberg "this would all be over for him quickly." Greenberg hesitated initially, but then agreed to go to the station.

¶4        At the station, Detective D.H. interviewed Greenberg. Acknowledging that Greenberg was transported to the station in a police car and that this was "close enough" to being considered in custody, Detective D.H. read Greenberg his *Miranda* rights, which Greenberg waived. The detective questioned Greenberg with the stated belief that

Greenberg faced misdemeanor trespass and voyeurism charges. Sometime that night, Greenberg confessed to trespass (the "August 27 trespass confession").

**¶5**        On the next day, Detective D.H. researched the prior contact Greenberg had with NAU police at Cline Library and discovered that the campus police questioned Greenberg in 2006 after he was observed "looking or videoing down women's shirts and up their dresses and skirts." He also learned of a report, made 10-months earlier that occurred on Hemlock Way, which was one block away from the location of Greenberg's residential trespass on August 27. This earlier incident involved the videotaping of a 12 year old girl through her window as she undressed in her bedroom. Greenberg had not been identified as the suspect.

**¶6**        Detective D.H. spoke to Detective M.S., a certified computer forensic examiner, who mentioned that suspects who engage in sexually motivated crimes often keep photographs, videos, and other evidence of their activities. Based on the Cline Library incident, the age of the victim in the August 27 trespass, and the actions of the suspect, who videotaped a 12 year old girl through her window on Hemlock Way, Detective M.S. advised that there was probable cause to believe that Greenberg was attempting to surreptitiously record or exploit a minor child. On this basis, the two detectives obtained a warrant from a magistrate to search Greenberg's residence and his car.

**¶7**        Upon executing the search warrant at Greenberg's residence, the police found numerous CDs and DVDs containing child pornography, sexually explicit videos of unknowing victims filmed by Greenberg, and a hand-held camera. The seizure included a video showing a young girl undressing in her bedroom, who looks out her window and screams; the video shuts off at that point. Images on this video indicate that it was made at the residence on Hemlock Way. There were also hundreds of videos of women filmed without their knowledge in Cline Library. The police also found other videos, taken from outside windows, showing women in various stages of undress or in the shower who appear to be unaware they are being filmed.

**¶8**        On August 31, 2009, Detective D.H. again interviewed Greenberg. At the beginning of this second interview, Detective D.H. read Greenberg his *Miranda* rights, which Greenberg again waived. During the interview, Greenberg confessed that he owned the CDs, DVDs, and other data storage devices containing the sexually explicit images and videos

found at his home (the "August 31 confession"). As a result of the two confessions and the seized evidence, the State charged Greenberg with one count of criminal trespass alleged to have been committed on or about August 27, 2009 and ten counts of sexual exploitation of a minor.

¶9        Greenberg filed a motion to suppress the August 27 trespass confession and the evidence seized from his home. He argued that

> (1) he did not voluntarily submit to the police interview, (2) the officers did not have probable cause to arrest him, (3) he was subjected to custodial interrogation but given defective *Miranda* warnings, (4) he was denied his constitutional right to counsel, (5) his confession was coerced, (6) the affidavit supporting the search warrant was fatally defective because it contained false statements and did not provide probable cause to search for child or adult pornography, and (7) the good faith exception to the exclusionary rule does not apply in this case.

*State v. Greenb[e]rg*, 1 CA-CR 10-0683, 2001 WL 1998401, at *2 ¶ 10 (Ariz. App. May 17, 2011) (mem. decision).

¶10        After an evidentiary hearing, the court suppressed the August 27 trespass confession and evidence seized pursuant to the search warrant. The August 27 trespass confession was suppressed on the ground that it was the result of an implied promise, but the court found no evidence to support the defendant's other contentions regarding the confession. The evidence seized pursuant to the search warrant was suppressed because the court decided the affidavit did not provide the magistrate with substantial evidence of probable cause. The court also found that the good faith exception to the exclusionary rule did not apply.

¶11        The State then moved to dismiss without prejudice all the pending charges except for the August 27, 2009 criminal trespass charge. The trial court granted the motion. The State appealed the trial court's grant of Greenberg's motion to suppress the seized evidence. *State v. Greenb[e]rg*, 1 CA-CR 10-0683 at *1, ¶ 1. The State did not, however, appeal the ruling suppressing the August 27 trespass confession. During the pendency of the appeal, Greenberg pled guilty to the charge of criminal trespass committed on August 27, 2009, and was placed on probation for two years.

¶12          The State's appeal of the suppression of the evidence seized under the search warrant was resolved in a May 2011 memorandum decision from this court. *Id.* This court concluded the trial court erred when it decided the magistrate's probable cause determination was erroneous and held that the warrant was valid. *Id* at *4, ¶ 18. The court listed the facts that supported the search warrant: (1) Greenberg was seen looking inside the window of a juvenile female and surreptitiously recording women at NAU; (2) Greenberg's residence was close to the 12 year old victim's home; and (3) Detective M.S.'s assertion that, in his training and experience, individuals who surreptitiously record people retain those recordings for later use or distribution. *Id.* Alternatively, this court found that the good faith exception applied to preclude suppression of the evidence obtained. *Id* at *5, ¶ 22. Accordingly, this court vacated the suppression order regarding the evidence seized as a result of the search warrant and remanded for further proceedings. *Id* at ¶ 22.

¶13          Following remand, the State indicted Greenberg on the following charges: Counts 1 and 6—first-degree criminal trespass, one count a class one misdemeanor and the other a class six felony[1]; Counts 2 and 4—voyeurism, class five felonies; Counts 3 and 5—surreptitious photographing, videotaping, filming, or digitally recording, class five felonies; and Counts 7 through 27—sexual exploitation of a minor, a dangerous crime against children, class two felonies. The indictment initiated a new prosecution under a new superior court cause number, presided over by a different superior court judge.

¶14          The trial court in this second prosecution conducted a voluntariness hearing, which included a reconsideration of the voluntariness of the August 27 trespass confession and the admissibility of the August 31 confession. At the hearing, the State re-asserted that the August 27 confession was admissible because it was not based on an implied promise.

¶15          From the record on appeal, it appears the State initially believed that the admissibility of the August 31 confession hinged upon the admissibility of both the August 27 trespass confession and the evidence seized pursuant to the search warrant. The State indicated to the court that

---

[1] These two trespass counts alleged offenses occurring in 2008 against different victims in different locations, separate from the August 27 trespass confession and the August 27, 2009, criminal trespass charge to which Greenberg had pled guilty.

"if the August 27th confession was voluntarily, appropriately obtained, if there was no problem with the August 27th, then there's no basis for suppression of the August 31st confession." In a subsequent motion, the State asserted alternatively that the "[d]efendant's [August 31] confession was the direct result of a lawful search warrant, not the result of the trespass confession." Furthermore, the State argued that "any taint from [the] supposedly lawless conduct by police in the first interview is completely dissipated by the legality (as found by the Arizona Court of Appeals), of the search warrant."

¶16        Greenberg contended the court was barred from considering the August 27 trespass confession's admissibility because the State did not appeal the ruling to the court of appeals. Greenberg also argued that absent an intervening change in law, the State could not relitigate an already suppressed confession.

¶17        The trial court found both confessions were admissible. Greenberg then waived his right to a jury trial and agreed to submit the matter to the court for a determination of guilt on a stipulated record. In February 2013, the court found Greenberg guilty of: Counts 7 through 26— sexual exploitation of a minor, dangerous crimes against children; Count 2— voyeurism; Count 3— surreptitious photographing, videotaping, filming or digitally recording; and Count 1— first-degree criminal trespass. He was acquitted on Counts 4, 5, and 6 (one count of voyeurism, one count of surreptitious videotaping, and one count of criminal trespass), and Count 27 was dismissed with prejudice at the State's request. The court sentenced Greenberg to consecutive prison terms totaling 340 years,[2] with 901 days' credit for pre-sentence incarceration.

¶18        Greenberg timely appeals. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).

---

[2]  Under A.R.S. § 13-705(D), the 20 counts (7 through 26) of sexual exploitation of a minor, as dangerous crimes against children, carry presumptive sentences of 17 years each. Because the crimes were classified as dangerous crimes against children, class 2 felony offenses, A.R.S. § 13-705(M) mandates that each sentence must be served consecutively. Thus, Greenberg's sentence totaled 340 years.

## I.    VOLUNTARINESS OF THE CONFESSIONS

¶19        Greenberg contends both the August 27 trespass confession and the August 31 confession were involuntary and, therefore, inadmissible.  We review the trial court's denial of a suppression order for clear error and "consider the evidence presented at the suppression hearing in the light most favorable to upholding the ruling."  *State v. Walker*, 215 Ariz. 91, 94, ¶ 16, 158 P.3d 220, 223 (App. 2007) (internal quotation omitted).

### A.    August 27 Confession

¶20        Greenberg contends the August 27 trespass confession was involuntary because he was illegally arrested at his home. The record, however, supports the court's finding that Greenberg was never "under arrest" because he freely chose to accompany police to the station for questioning, despite his initial hesitation.

¶21        Greenberg further contends the August 27 trespass confession was involuntary because the police questioning included an "implied promise" that he would be charged with only a misdemeanor if he confessed.  A confession is presumptively involuntary, but a prima facie case for admission is established when an officer testifies that the confession was obtained without coercion or promises.  *State v. Ellison*, 213 Ariz. 116, 127–28, ¶¶ 30–31, 140 P.3d 899, 910–11 (2006).  If an alleged promise is couched in terms of mere possibility or opinion it is not deemed sufficient to render a confession involuntary. *State v. McVay*, 127 Ariz. 18, 20, 617 P.2d 1134, 1136 (1980) (citing *State v. Steelman*, 120 Ariz. 301, 310, 585 P.2d 1213, 1222 (1978)); *State v. Jordan*, 114 Ariz. 452, 455, 561 P.2d 1224, 1227 (1976), *vacated on other grounds*, *Jordan v. Arizona*, 438 U.S. 911, 98 S.Ct. 3138, 57 L.Ed.2d 1157 (1978)).  Moreover, encouragement from police to tell the truth is a proper interrogation tactic.  *State v. Blakley*, 204 Ariz. 429, 436, ¶29, 65 P.3d 77, 84 (2003).

¶22        Detective D.H. testified at the evidentiary hearing that Greenberg's confession was not obtained by coercion or promises. Greenberg himself initiated a discussion with Detective D.H. by asking about the consequences if he admitted culpability during the August 27 interview:

> Mr. Greenberg: And I'm going to go sit in a jail cell then right now.  Is that what you're saying?

Det. D.H.: I didn't say that.

Mr. Greenberg: I mean, if I did say that – if I was to admit that, then I would go to be in [sic] jail. And I didn't do anything. Is that what you're saying?

Det. D.H.: I just want you to tell me the truth about tonight. That's all I want. I just want you to man up and be a man and tell me what happened tonight.

. . . .

Mr. Greenberg: And if I did say anything, then who -- I mean, what -- so -- can you tell me what would happen? I'd go sit in a jail cell till tomorrow morning?

Det. D.H.: That's possible.

Mr. Greenberg: Would it be any longer than that?

Det. D.H.: It's possible. It's possible that -- it's possible that you could be charged with a crime, a misdemeanor, and have to see a judge in the morning. That's possible.

¶23 Greenberg contends that Detective D.H. told him he was going to be charged with a misdemeanor to coax Greenberg into a confession, but the record supports the second judge's determination that the detective made no express or implied promise. Moreover, a defendant's ignorance of the full consequences of his decisions does not vitiate the voluntariness of his statements. *Oregon v. Elstad*, 470 U.S. 298, 316, 105 S. Ct. 1285, 1297, 84 L. Ed. 2d 222 (1985). Even if Detective D.H.'s tactics were "close to the line," we cannot say on this record that the trial court was "clearly and manifestly wrong" in determining that Greenberg's statements were voluntary. *See Blakley*, 204 Ariz. at 437, ¶ 32, 65 P.3d at 85.

### B. August 31 Confession

¶24 Greenberg also asserts that the August 31 confession should have been excluded from evidence, but he does not develop this argument. Because Greenberg does not "present significant arguments, supported by authority," setting forth his position, we will not consider it further on appeal. *See State v. Carver*, 160 Ariz. 167, 175, 771 P.2d 1382, 1390 (1989); *see*

*also State v. Moody*, 208 Ariz. 424, 452, ¶ 101 n.9, 94 P.3d 1119, 1147 n.9 (2004) (explaining that "[m]erely mentioning an argument is not enough").

## II.    RELITIGATION OF ADMISSIBILITY OF THE AUGUST 27 CONFESSION

**¶25**        Relying on  the law of the case doctrine, Arizona Rule of Criminal Procedure 16.1(d),[3] and collateral estoppel, Greenberg claims the trial court erred in allowing the State to "horizontally appeal" the voluntariness of the August 27 trespass confession.

### A.      Law of the Case and Rule 16.1(d)

**¶26**        The law of the case doctrine addresses whether a trial court may revisit questions previously decided in the *same case* by the same court or a higher appellate court.  *State v. Whelan*, 208 Ariz. 168, 171, ¶ 8, 91 P.3d 1011, 1014 (App. 2004).  And "Rule 16.1(d), like the law of the case doctrine, is procedural and applies in the setting of the *same* case."  *Id*. at 171 ¶ 9, 91 P.3d at 1014 (emphasis in original); *see* Ariz. R. Crim. P. 16.1(a) (noting Rule 16 "shall govern the procedure to be followed in cases between arraignment and trial").

**¶27**        Here, similar to *Whelan*, there were two separate cases because the court granted the State's motion for dismissal without prejudice following the initial suppression ruling, and Greenberg was thereafter re-indicted and prosecuted under a new cause number.  Although the charges in the second case (from which this appeal arises) were similar to those in the first, the second case includes additional charges and is not the same as the first.  The "law of the case" doctrine and Rule 16.1(d) are not applicable, and the trial court in the second prosecution was not precluded on these grounds from making a fresh determination regarding the admissibility of the August 27 trespass confession.  *See Whelan*, 208 Ariz. at 171, ¶10, 91 P.3d at 1014.

### B.      Collateral Estoppel

**¶28**        Greenberg also relies on the doctrine of collateral estoppel to argue that the court in the second case was precluded from revisiting the ruling in the first case.  This court in *Whelan* reserved the specific question "whether an interlocutory suppression order, subject to appeal, is final for

---

[3] Rule 16.1(d) provides that "an issue previously determined by the court shall not be reconsidered."

purposes of collateral estoppel."  *Id.* at 172, ¶ 14, 91 P.3d at 1015.  We must now reach that issue.

**¶29**         Collateral estoppel generally means that the parties are barred from relitigating an issue in a future proceeding when the "issue of ultimate fact has once been determined by a valid and final judgment." *State v. Jimenez,* 130 Ariz. 138, 140, 634 P.2d 950, 952 (1981) (internal quotation omitted).  The doctrine protects against relitigation of issues, but it is disfavored and should be applied sparingly in criminal contexts. *Whelan*, 208 Ariz. at 172, ¶¶ 12–14, 91 P.3d at 1015.  Nonetheless, our supreme court in *Jimenez* adopted the "traditional elements of collateral estoppel" as applying in the criminal context:

> the issue sought to be relitigated must be precisely the same as the issue in the previous litigation; a *final decision* on the issue must have been *necessary for the judgment* in the prior litigation; there must be mutuality of parties.

130 Ariz. at 140, 634 P.2d at 952 (emphasis added).

**¶30**         As applied here, the parties in both proceedings were the same—the State and Greenberg; and the issue to be litigated was the same—the admissibility of the August 27 trespass confession.  But we conclude that collateral estoppel does not apply because the suppression ruling was interlocutory, not final, and the dismissal without prejudice was not a final resolution of the issues between the parties.   Such non-final rulings do not form the foundation required for the application of collateral estoppel. Additionally, under Arizona law pertaining to criminal prosecutions, collateral estoppel requires a prior "judgment" and the dismissal without prejudice does not constitute a judgment for this purpose.  *See Whelan*, 208 Ariz. at 172, ¶ 13, 91 P.3d at 1015 (citing *Jimenez*, 130 Ariz. at 140, 634 P.2d at 952).

### 1. No Final Decision

**¶31**         The ruling suppressing the August 27 trespass confession was interlocutory.  *Id.* ("the suppression order, though appealable . . . was an interlocutory order").   This court has "construed the 'final decision' requirement to mean that '[f]or collateral estoppel to apply . . . *a valid and final decision on the merits* must have been entered.'"  *Id.* at 172, ¶ 13, 91 P.3d at 1015 (citing *Garcia v. Gen. Motors Corp.*, 195 Ariz. 510, 514, ¶ 9, 990 P.2d

1069, 1073 (App. 1999) (emphasis added)). An interlocutory suppression order is not final for purposes of collateral estoppel.

¶32        Because the State did not appeal the August 27 suppression ruling, Greenberg contends the decision became final for purposes of the collateral estoppel doctrine. But the fact the ruling could have been appealed, but was not, does not alter its non-final nature. We hold that an order granting a motion to suppress evidence in a criminal prosecution, which could have been appealed but was not appealed, does not constitute a final determination of the issue between the parties and cannot form the foundation for application of collateral estoppel in a subsequent case.

¶33        Our conclusion is supported by a number of decisions of courts in other jurisdictions. For example, the intermediate appellate courts of Kansas, Texas, and Missouri have determined that unappealed suppression orders are not final for purposes of collateral estoppel. *See State v. Heigele*, 789 P.2d 218, 219–20 (Kan. Ct. App. 1990) (holding that dismissal without prejudice of prior case in which evidence was suppressed was not a final judgment even though the state did not appeal the ruling); *State v. Beezley*, 752 S.W.2d 915, 917 (Mo. Ct. App. 1988) (determining that suppression ruling was not binding on future proceedings even though the state had an opportunity to appeal the ruling but did not); *State v. Henry*, 25 S.W.3d 260, 261–62 (Tx. App. 2000) (concluding that an interlocutory ruling in a case that was dismissed without prejudice and not appealed does not have collateral estoppel effect). *But see People v. Williams*, 322 N.E.2d 461 (Ill. 1975) (ruling that collateral estoppel prevented relitigation of a "final" suppression order when the state had a right to appeal but did not).

## 2. Absence of a "Judgment"

¶34        The suppression ruling and dismissal of the prosecution without prejudice do not support application of collateral estoppel for another reason: collateral estoppel attaches only to judgments. *State v. Nunez*, 167 Ariz. 272, 277, 806 P.2d 861, 866 (1991). As applied, a judgment is "the adjudication of the court based upon the verdict of the jury, upon the plea of the defendant, or upon its own finding following a non-jury trial, that the defendant is guilty or not guilty." Ariz. R. Crim. P. 26.1(a).

¶35        In *Nunez*, the Arizona Supreme Court rejected the defendant's claim that collateral estoppel barred a third trial for negligent homicide when he was tried in two previous trials for the same charge and with the same facts. 167 Ariz. at 278, 806 P.2d at 867. The court determined that no judgment was entered after the two prior trials because the trial court

11

granted the defendant's requests for new trials based on juror misconduct. *Nunez* reached its decision by applying the definition of judgment from Arizona Rule of Criminal Procedure 26.1. *Id.; see State v. Williams*, 131 Ariz. 211, 213, 639 P. 2d 1036, 1038 (1982). The supreme court took a similar approach in *Williams*, in which the prior litigation was a probation revocation hearing. 131 Ariz. at 212, 639 P.2d at 1037. The superior court denied revocation because the state did not prove a violation. *Id.* The defendant was subsequently convicted of sexual assault "which was the basis of the petition to revoke [the defendant's] probation." *Id.* at 213, 639 P.2d at 1038. The defendant contended that collateral estoppel barred the sexual assault conviction. *Id.* The supreme court disagreed, stating that the result of the revocation hearing did not "rise to the respectability of a judgment." *Id.*

¶36        Although the trial court's rulings in this case are procedurally distinguishable from those in *Williams* and *Nunez*, the collateral estoppel analysis is similar. For collateral estoppel purposes, a dismissal without prejudice does not constitute a judgment under Arizona Rule of Criminal Procedure 26.1(a).

¶37        To summarize, the grant of the motion to suppress and the dismissal without prejudice of the first prosecution against Greenberg do not provide a foundation for application of collateral estoppel. The suppression ruling was interlocutory, not final, and there was no "judgment" as required for collateral estoppel.

**CONCLUSION**

¶38        For these reasons, we affirm Greenberg's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: ama