IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

STATE OF ARIZONA, *Appellee/Cross-Appellant*,

*v.*

RANDY SCOTT YOUNG, *Appellant/Cross-Appellee*.

No. 1 CA-CR 23-0355
FILED 06-13-2024

Appeal from the Superior Court in Yavapai County
No. V1300CR201880059
The Honorable Krista M. Carman, Judge
The Honorable Tina R. Ainley, Judge
The Honorable Michael R. Bluff, Judge

**AFFIRMED IN PART; DISMISSED IN PART**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joshua C. Smith
*Counsel for Appellee/Cross-Appellant*

Zickerman Law Office, Flagstaff
By Adam Zickerman
*Counsel for Appellant/Cross-Appellee*

---

**OPINION**

Presiding Judge Paul J. McMurdie delivered the Court's opinion, in which Judge Maria Elena Cruz and Judge Cynthia J. Bailey joined.

---

**M c M U R D I E**, Judge:

¶1        Defendant Randy Young appeals his convictions and sentences for six counts of sexual exploitation of a minor. In a previous case, the superior court suppressed evidence found on Young's laptop computer. The State then moved to dismiss the charges without prejudice, which the court granted. Some six years later, the State refiled the charges. The court denied Young's suppression motion in the refiled case, and the jurors convicted him. On appeal, Young argues that the court erred by not following the previous suppression order.

¶2        We hold that the superior court was not bound by the previous suppression order under Arizona Rule of Criminal Procedure ("Rule") 16, the law of the case, or collateral estoppel. On the suppression motion's merits, we hold that the Fourth Amendment does not apply to co-employees who are searching for non-criminal files (lesson plans) and accidentally stumble onto contraband (child pornography).

¶3        The State cross-appeals, challenging Young's sentence as illegally lenient because the court ordered one count to run concurrently with, rather than consecutive to, the other counts. We dismiss the State's cross-appeal because it was not timely filed.

¶4        Thus, we affirm Young's convictions and sentences.

## FACTS[1] AND PROCEDURAL BACKGROUND

**¶5**　　　Young taught and coached at American Heritage Academy, a charter school formed by Steve Anderson, the school's principal,[2] and his wife. The principal ran the school, and some of his children worked there. Angela White, the principal's daughter, taught history and English classes. Aaron Anderson, the principal's son, was the school's athletic director and assisted with technological services.

**¶6**　　　Young was the assistant athletic director. Young shared classroom space with White. In early 2012, White took over Young's classes when his employment was suspended or terminated. White began looking for Young's lesson plans and assumed the plans were on Young's personal laptop in the classroom. The laptop appeared uncharged, so White brought it to Anderson to help her find the lesson plans.

**¶7**　　　Young's laptop was password-protected, but Anderson knew Young's password because they shared it to access each other's sports schedules. Anderson successfully logged onto the computer using Young's password. Once Anderson and White accessed the computer, they searched Young's files for the lesson plans. During the search, they opened a file folder containing sexually explicit pictures of naked children.

**¶8**　　　Anderson and White contacted the principal and showed him the laptop. The principal viewed the images and called the police. After receiving a report that the school had a laptop with illegal images, the police visited the school. The principal gave Young's laptop to the police. The police secured the laptop and obtained a search warrant based on the information given to them. They then searched the laptop and found pornographic images of children.

**¶9**　　　The State charged Young with multiple counts of sexual exploitation of a minor. *See* A.R.S. § 13-3553(A)(2). Young moved to suppress the laptop evidence, claiming a Fourth Amendment violation. He argued he had a legitimate expectation of privacy in his laptop, the school

---

[1]　　　We view the facts in the light most favorable to sustaining the judgment. *State v. Mendoza*, 248 Ariz. 6, 11, ¶ 1, n.1 (App. 2019).

[2]　　　The record also identifies Steve Anderson as the school's "director," "founder," "superintendent," "owner," and "administrator." For consistency, we call Steve Anderson the "principal."

employees were state actors who searched the laptop unlawfully without a warrant, and the police improperly seized the laptop without a warrant. In response, the State claimed there was no Fourth Amendment violation because Young abandoned his laptop at the school and had no legitimate privacy expectation. The superior court found that Young did not abandon the laptop and had a legitimate privacy expectation, so it suppressed the laptop evidence. The court dismissed the charges without prejudice on the State's motion.

¶10         In 2018, the State re-charged Young with ten counts of sexual exploitation of a minor. Young moved to dismiss the indictment, arguing it was "unsupported by admissible evidence." *See* Ariz. R. Crim. P. 16.4(b) (On the defendant's motion, the superior court must dismiss the prosecution if the indictment is insufficient.). Young explained that the prosecution was based on the same evidence suppressed in the 2012 case, the State never appealed the suppression, and there was no new evidence supporting the charges. The State argued the prior suppression order did not bar it from re-litigating the matter.

¶11         Young also argued that re-litigating the evidence's admissibility violated Rule 16.1(d). But the superior court found that Rule 16 did not apply because the 2012 and 2018 matters were separate cases. Under *State v. Greenberg*, the court determined it could reconsider the evidence's admissibility. 236 Ariz. 592 (App. 2015).

¶12         Turning to the motion's merits, the superior court held an evidentiary hearing. White, Anderson, and the principal recounted their actions and experiences when they accessed Young's laptop in 2012. This time, along with arguing that Young had no legitimate privacy expectation in the laptop, the State also argued that no impermissible search occurred because the school employees were not state actors, and the police could lawfully seize the laptop based on what the co-employees discovered.

¶13         The court denied the motion to suppress. The court applied the test for searches performed by private citizens. It found that there was no evidence the government was involved in the initial search of Young's laptop, and Young presented no evidence at the hearing showing White was looking for something other than Young's lesson plans. Thus, White, Anderson, and the principal were "simply school employees looking for a class curriculum" when they discovered the illegal images. The court found no error in the police's seizure, and there was no challenge to the search warrant's validity.

¶14        The case proceeded to trial. The court dismissed four counts without prejudice on the State's motion. A jury found Young guilty on the six remaining counts. For five counts, the jury found beyond a reasonable doubt that the depicted minors were under 15 years old. The court sentenced Young to consecutive ten-year sentences for the five counts. For the count without a jury finding that the depicted minor was under 15, the court sentenced Young to a concurrent sentence of four years.

¶15        Young appealed. The State cross-appealed. We have jurisdiction to review Young's appeal under A.R.S. §§ 12-120.21(A)(1) and 13-4033(A)(1). We lack jurisdiction to address the State's cross-appeal.

## DISCUSSION

### A.    The Superior Court Did Not Abuse Its Discretion by Denying Young's Motion to Dismiss.

¶16        Young argues the superior court erred by denying the motion to dismiss because the 2018 indictment was not supported by admissible evidence, and the re-indictment violated his right to be free from double jeopardy. We review the court's ruling on a motion to dismiss for abuse of discretion and related constitutional claims *de novo. State v. Holmes*, 250 Ariz. 311, 313, ¶ 5 (App. 2020) (quoting *State v. Ramsey*, 211 Ariz. 529, 532, ¶ 5 (App. 2005)).

¶17        This court addressed the procedure for handling previously suppressed evidence in a later filed case in *Greenberg*, 236 Ariz. 592. In *Greenberg*, the superior court suppressed a defendant's confession and dismissed sexual exploitation charges without prejudice, and the State did not appeal the confession suppression ruling. *Id.* at 595-96, ¶¶ 10-11. Later, the State re-charged the defendant with multiple counts of sexual exploitation of a minor and additional charges. *Id.* at 596, ¶ 13. The superior court reconsidered the voluntariness of the defendant's confession and ruled that the suppressed confession was admissible in the second case. *Id.* at ¶¶ 14, 17.

¶18        This court found no error with the superior court's subsequent review of the confession's admissibility. *See Greenberg*, 236 Ariz. at 598, 600, ¶¶ 25, 37. We concluded that neither the law of the case, Rule 16.1(d), nor collateral estoppel precluded the court from reconsidering the confession's admissibility in the second prosecution. *Id.* Applying *Greenberg* to a Fourth Amendment suppression issue, we conclude that the superior court did not err by reconsidering the laptop evidence admissibility in this case.

¶19        Under the law of the case, a court will not "reopen questions previously decided in the *same* case by the same court or a higher appellate court." *State v. Whelan*, 208 Ariz. 168, 171, ¶ 8 (App. 2004) (quoting *Davis v. Davis*, 195 Ariz. 158, 162, ¶ 13 (App. 1999)). Similarly, under Rule 16.1(d), "[a] court may not reconsider an issue previously decided in the case" unless good cause or other rules require otherwise. Law of the case and Rule 16.1(d) "appl[y] in the setting of the *same* case." *Whelan*, 208 Ariz. at 171, ¶ 9. Thus, neither applies here because "although the underlying facts in each prosecution were identical and the charges were the same, there were two separate actions." *Id.* at ¶ 10.

¶20        Under collateral estoppel principles, once a valid and final judgment determines an issue, the same parties cannot re-litigate an issue in a future lawsuit. *State v. Stauffer*, 112 Ariz. 26, 29 (1975) (quoting *Ashe v. Swenson*, 397 U.S. 436, 443 (1970)). For collateral estoppel to apply, a court must make a final decision on the case's merits. *See Whelan*, 208 Ariz. at 172, ¶ 13. Collateral estoppel does not apply here because neither the 2012 order suppressing the laptop evidence nor the order dismissing the case without prejudice were final judgments for collateral estoppel purposes. *See Greenberg*, 236 Ariz. at 599, ¶¶ 31, 32 ("An interlocutory suppression order is not final for purposes of collateral estoppel," and that a ruling "could have been appealed, but was not, does not alter its non-final nature."); *id.* at 600, ¶ 36 ("For collateral estoppel purposes, a dismissal without prejudice does not constitute a judgment."). Thus, the superior court was not bound by the suppression order from the 2012 case and did not abuse its discretion by denying Young's motion to dismiss or preclude the evidence.

¶21        Young argues that if *Greenberg* allows the State to reuse evidence suppressed previously because of a constitutional violation, it "cannot be tolerated" because it guts the Fourth Amendment and the exclusionary rule. But if the State re-indicts a defendant using evidence suppressed in a prior case, the defendant can re-argue that the State obtained the evidence unconstitutionally, as Young did here. That a criminal defendant may have to re-litigate a previously decided issue does not nullify the Fourth Amendment.

¶22        Young also argues that the State cannot "subvert a Court's ruling by dismissing the case then re-filing in order to re-litigate the issues." Young contends that the State re-filed the charges in hopes of arguing before a new judge. Young provided no evidence that the State dismissed and re-filed for this purpose, and the six-year gap between the cases negates the thought that it did. Thus, we need not address that argument here.

¶23    Finally, Young claims the re-indictment violated his double jeopardy rights. Under the United States Constitution, no person will be brought into jeopardy twice for the same offense. U.S. Const. Amend. V; *see also Benton v. Maryland*, 395 U.S. 784, 794 (1969) (The Fifth Amendment's double jeopardy clause applies to the states through the Fourteenth Amendment.). Generally, once jeopardy attaches, the State cannot prosecute the defendant again. *Jones v. Kiger*, 194 Ariz. 523, 526, ¶ 7 (App. 1999). The constitutional protection against double jeopardy also incorporates collateral estoppel. *Stauffer*, 112 Ariz. at 29.

¶24    But jeopardy does not attach until a jury is empaneled and sworn, *see State v. Riggins*, 111 Ariz. 281, 283 (1974), or when the defendant pleads guilty, *Parent v. McClennen*, 206 Ariz. 473, 475, ¶ 9 (App. 2003). And neither jeopardy-triggering event occurred in the 2012 case. When the court granted Young's suppression motion in 2012, the State moved to dismiss the case without prejudice, and the court granted the motion. Because jeopardy had not attached to the 2012 case, there was no double jeopardy or collateral estoppel violation.

## B.    The Superior Court Did Not Abuse Its Discretion by Denying Young's Suppression Motion.

¶25    Young argues that the superior court's denial of the suppression motion violated his Fourth Amendment and due process rights. On appeal, the State now concedes that Young had a reasonable privacy expectation in his laptop but argues there was no constitutional violation because the school employees were not state actors.[3] We review the superior court's order denying the motion to suppress for abuse of discretion and view "the facts in the light most favorable to sustaining the ruling." *State v. Weakland*, 246 Ariz. 67, 69, ¶ 5 (2019) (quoting *State v. Valenzuela*, 239 Ariz. 299, 302, ¶ 9 (2016)). But we review the constitutional claim *de novo*. *State v. Fristoe*, 251 Ariz. 255, 259, ¶ 9 (App. 2021).

¶26    The Fourth Amendment protects individuals against unreasonable searches and seizures. *State v. Dean*, 206 Ariz. 158, 161, ¶ 8 (2003); U.S. Const. Amend. IV. A "search" occurs when the government infringes on someone's reasonable privacy expectation, *State v. Mixton*, 250 Ariz. 282, 286, ¶ 13 (2021) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)), or trespasses upon a protected area, *United States v. Jones*, 565 U.S.

---

[3]    Based on the State's concession, we assume without deciding that Young had a reasonable privacy expectation in his laptop.

400, 406-07 (2012). A "seizure" occurs when the government meaningfully interferes with a person's possessory property interest. *State v. Peters*, 189 Ariz. 216, 218 (1997).

¶27 The Fourth Amendment applies to a government employer or agent or a government supervisor's search of their employees' private property. *O'Connor v. Ortega*, 480 U.S. 709, 715-17 (1987). It also applies to employees who search on behalf of a government employer. *See, e.g., id.* at 713 (State hospital supervisor "selected several Hospital personnel to conduct the investigation."); *United States v. Fernandes*, 272 F.3d 938, 940 (7th Cir. 2001) (County employer dispatched employees to search the defendant's office.); *United States v. Gonzalez*, 300 F.3d 1048, 1050, 1051 (Store detective searched items according to Air Force Base policy.). We have found no case, nor has Young cited one to us, when a court suppressed evidence based on a search by a co-employee who was not acting on behalf of a government employer or supervisor. *See, e.g., United States v. Inman*, No. 4:06CR00353 ERW, 2007 WL 9719134, at *1-3 (E.D. Mo. Jan. 11, 2007) (Government employees were acting as private citizens when opening their co-employee's laptop in search of the co-employee's girlfriend's name because the government did not know about the activity, the employees did not report their actions to their supervisor until after they viewed the laptop, and they did not intend to assist law enforcement when they first opened the laptop.). As the Fourth Amendment protects only against government action, *Jacobsen*, 466 U.S. at 113, it does not prohibit searches and seizures by "a private individual not acting as an agent of the Government or with the participation or knowledge of any government official." *Id.* (quoting *Walter v. United States*, 447 U.S. 649, 662 (1980) (Blackmun, J., dissenting)).

¶28 Even if the Fourth Amendment applies to a public employer or supervisor's search, such a search may fall within an exception to the warrant requirement and be permissible if the search is work-related and reasonable. *See O'Connor*, 480 U.S. at 721-23. The warrantless search may be justified if it is "necessary for a noninvestigatory work-related purpose such as to retrieve a needed file" and reasonable in scope. *See id.* at 725-26; *see also id.* at 732 (Scalia, J., concurring) ("[G]overnment searches to retrieve work-related materials . . . do not violate the Fourth Amendment.").

¶29 So the first issue to be resolved is whether White or Anderson were state actors during their search. Young argues the school employees were state actors because they were government employees searching for criminal evidence. He claims that "it is well established that the Fourth

Amendment governs the conduct of school officials." Young is only partially correct.

¶30      The Fourth Amendment applies to public school officials searching students because "they act in furtherance of publicly mandated educational and disciplinary policies." *New Jersey v. T.L.O.*, 469 U.S. 325, 336 (1985). Public school officials are state actors only when they carry out publicly-mandated educational or disciplinary policies or act in concert with the government. *Compare State v. Serna*, 176 Ariz. 267, 270 (App. 1993) (Public high school security guards, acting as the school principal's agents, were state actors when searching students because they were enforcing school disciplinary policies.), *with State v. Jones*, 715 S.E.2d 896, 902 (N.C. App. 2011) (School principal was not a government actor when showing photographs to a student because he "was not acting pursuant to any educational or disciplinary policies, nor was he acting as a law enforcement officer conducting an investigation on behalf of the State."). *See also State v. Ludvik*, 698 P.2d 1064, 1068 (Wash. App. 1985) (We measure government action not by a person's occupation but the capacity in which the person acts during the search.); *State v. Andrews*, 637 A.2d 787, 790 (Conn. App. 1994) (similar).

¶31      The superior court found that White, Anderson, and the principal worked at a private school. This finding is unsupported by the record. American Heritage Academy is a charter school. In Arizona, a charter school is "a public school established by contract . . . to provide learning that will improve pupil achievement." A.R.S. § 15-101(4). "Charter schools are public schools that serve as alternatives to traditional public schools." A.R.S. § 15-181(A).

¶32      Still, not all Arizona charter school employees are state actors, even if a charter school is "public" by statute. *See generally Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806 (9th Cir. 2010). In *Caviness*, the Ninth Circuit considered whether a private, non-profit corporation running

a charter school was a "state actor" when making employment decisions.[4] 590 F.3d at 812-13. The court recognized that the Arizona legislature defines a charter school as a "public school" but concluded the "inquiry does not end there" because "the conduct of a private corporation [was] at issue." *Id.* at 812. The court reviewed the conduct being challenged "because an entity may be a State actor for some purposes but not for others." *Id.* at 813 (quoting *Lee v. Katz*, 276 F.3d 550, 555, n.5 (9th Cir. 2002)). Thus, the court considered whether the corporation's role as an employer was state action. *Id.* The court found no reasonable inference that the corporation was a state actor because the corporation's actions and decisions were "made by concededly private parties, and turn[ed] on judgments made by private parties without standards established by the State." *Id.* at 818 (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999)).

¶33　　　　Unlike the court in *Caviness*, we have little information about the charter school in this case. *See* 590 F.3d at 808, 810. We know that the principal formed the school, but the record is unclear about the school's organizational structure and governing body. And we do not know the charter's policies.[5]

¶34　　　　That said, Young's state action argument fails. Even if White and Anderson were public school officials, as contemplated in *T.L.O.*, Young still failed to argue that White and Anderson acted under a public education or disciplinary policy. *See* 469 U.S. at 336. Similarly, there is no suggestion that Anderson and White acted under a state standard or governmental policy. *See Caviness*, 590 F.3d at 818; *see also United States v.*

---

[4]　　　An applicant seeking to establish a charter school must apply to a proposed sponsor, and the sponsor "may be the state board of education, the state board for charter schools, a university under the jurisdiction of the Arizona board of regents, a community college district or a group of community college districts." A.R.S. § 15-183(A), (C). The sponsor may contract with a public or private entity. *Id.* § 15-183(B). The sponsor has "oversight and administrative responsibility" for the charter school. *Id.* § 15-183(R).

[5]　　　The charter must "[e]nsure compliance with federal, state and local rules, regulations and statutes relating to health, safety, civil rights and insurance." A.R.S. § 15-183(E)(1). But unless otherwise specified in Arizona's statutes for charter schools or in the school's charter, a charter school "is exempt from all statutes and rules relating to schools, governing boards and school districts." *Id.* § 15-183(E)(5).

*Soderstrand*, 412 F.3d 1146, 1153 (10th Cir. 2005) (University employee was not a state actor for Fourth Amendment purposes when opening a co-worker's safe because she was "acting solely on her own account," not "pursuant to any law enforcement or other governmental objective."). The superior court did not abuse its discretion when it found that Young failed to establish that White and Anderson were anything but his co-workers looking for lesson plans. *Cf. Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.*, 363 F.3d 177, 181-82 (2d Cir. 2004) (applying the Fourth Amendment to school principals' search of former teacher's classroom). Young did not argue that White or Anderson acted in a supervisory capacity, had authority over him under a governmental policy, or acted on behalf of Young's employer or supervisor.

¶35            Their conduct is not state action if Anderson and White acted as private citizens (co-employees) when they found the files leading to the charges against Young. *See Fristoe*, 251 Ariz. at 259, ¶ 13. To determine whether a private individual is a government actor for Fourth Amendment purposes, we consider "(1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the party performing the search intended to assist law enforcement efforts." *Id.* (quoting *United States v. Snowadzki*, 723 F.2d 1427, 1429 (9th Cir. 1984)). If the defendant fails to prove either element, the private citizen was not a state actor. *Id.* (quoting *State v. Martinez*, 221 Ariz. 383, 392, ¶ 31 (App. 2009)).

¶36            The record supports the superior court's factual finding that Anderson and White intended to search for lesson plans, and there was no evidence at the suppression hearing supporting government influence on or involvement in their search. *See Fristoe*, 251 Ariz. at 259, ¶ 13; *Inman*, 2007 WL 9719134, at *2-3 (quoting *United States v. Attson*, 900 F.2d 1427, 1431 (9th Cir. 1990)) (The co-employees' actions were not to "elicit a benefit for the government."). Thus, the Fourth Amendment did not prohibit Anderson and White's search of Young's laptop, either because they were private citizens or their search falls under the "non-investigatory work-related" exception. *See O'Connor*, 480 U.S. at 726, 732.

¶37            We need not decide whether the principal was a state actor because the laptop information was not private when he viewed the images. *See Jacobsen*, 466 U.S. at 117 ("Once frustration of the original expectation of privacy occurs, the Fourth Amendment does not prohibit governmental use of the now-nonprivate information."). A Fourth Amendment violation may occur if the government's subsequent search exceeds the scope of the initial private search. *See, e.g.*, *Walter*, 447 U.S. at 652, 657 (Private employees opened film boxes and discovered "explicit

descriptions," and FBI agents' warrantless viewing of the films was a "significant expansion" of the private employees' search.). But here, there is no suggestion that the principal exceeded the scope of White and Anderson's search. Rather, the principal testified at the suppression hearing that he viewed only "a couple of pictures" that White and Anderson found. Thus, even if the principal were a state actor, the principal's viewing of the photos did not require a warrant because White and Anderson searched the laptop and viewed the photos first. And the principal's viewing of the photos did not exceed the scope of White and Anderson's search. *See Jacobsen*, 466 U.S. at 120 (The government agent "learn[ed] nothing that had not previously been learned during the private search.").

¶38        Finally, Young challenges the police's warrantless seizure of the laptop. But when the police took possession of the laptop, Young's privacy expectation had been compromised, *see Jacobsen*, 466 U.S. at 113, and the police had learned that the laptop contained illegal images. "[I]t is well-settled that it is constitutionally reasonable for law enforcement to seize 'effects' that cannot support a justifiable expectation of privacy without a warrant, based on probable cause to believe they contain contraband." *Jacobsen*, 466 U.S. at 121-22. The police did not search the laptop until they obtained a search warrant, so they did not engage in a warrantless search that exceeded the scope of the initial privacy invasion. *See id.* at 115. Thus, the warrantless seizure was reasonable.

¶39        Young made no argument before the superior court nor this court that the search warrant lacked probable cause. Because there was no Fourth Amendment violation, the superior court did not abuse its discretion by denying the suppression motion.

## C.    We Lack Jurisdiction to Consider the State's Cross-Appeal.

¶40        We lack jurisdiction over the cross-appeal because the State filed untimely. A notice of cross-appeal "must be filed no later than 20 days after the appellant's notice of appeal is filed." Ariz. R. Crim. P. 31.2(a)(2)(C). When computing time, the court "[e]xclude[s] the day of the act or event from which the designated time period begins to run." Ariz. R. Crim. P. 1.10(a)(1). Young filed a notice of appeal on August 9, 2023, so the State had to file a notice of cross-appeal no later than August 29, 2023. *See* Ariz R. Crim. P. 31.2(a)(2)(C), 1.10(a)(1). The State filed its notice of cross-appeal on August 30, 2023. Thus, the cross-appeal was untimely, and we lack jurisdiction to review it. *See State v. Dawson*, 164 Ariz. 278, 282 (1990) ("[T]he state's failure to timely appeal or cross-appeal acts as a jurisdictional bar to

its raising the [illegal sentencing] error.); *State v. Limon*, 229 Ariz. 22, 23, ¶ 3 (App. 2011). We dismiss the cross-appeal.

**CONCLUSION**

¶41     We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AGFV